Phillip BEACH and Cesare Motisi,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 82A01–8702–CR–48.

Court of Appeals of Indiana,
First District.

Aug. 31, 1987.

Rehearing Denied Oct. 19, 1987.

Malcolm G. Montgomery, Evansville, for Phillip Beach.

James L. Kiely, Evansville, for Cesare Motisi.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Cesare Motisi (Motisi) and Phillip Beach (Beach), appeal their convictions of attempted battery, a Class C felony, and criminal recklessness, a Class D felony, following a jury trial in the Vanderburgh Circuit Court.

We affirm.

## STATEMENT OF THE FACTS

On the evening of April 25, 1985, one Dawn Flowers and a friend, Robin Davis (Davis), walked down a neighborhood street to use a pay telephone. Beach was already using the phone and Motisi was waiting for him nearby when they arrived. While he was on the telephone, Beach became annoyed with Davis, and words were exchanged between them. They confronted each other, and Beach began chasing Davis down the street, yelling obscenities at him. As he did so he passed the home of Billy Riggles (Riggles). Riggles lived in the home with Doris Flowers, Dawn's mother, and her four children. Riggles and several children were outside in the front yard as the incident transpired, and Riggles asked Beach to watch his language around the children. An argument ensued between them, after which Beach left and returned to his car, picked up Motisi, and proceeded to drive his vehicle down the sidewalk in front of Riggles' home, narrowly missing Doris Flowers, among others, as she jumped from the path of the oncoming car. The police were summoned, but Beach and Motisi had left the scene by the time they arrived. Thirty minutes later, Beach and Motisi returned with Beach still driving. They exited the vehicle and began shouting at the people inside the Riggles's home. Motisi was armed with a rifle at this point, and he fired it several times, including one shot aimed at Riggles, who was standing on his front porch. The police were summoned again, and both Beach and Motisi were arrested. Following a jury trial Motisi and Beach were found guilty of attempted battery and criminal recklessness. They subsequently instituted this appeal.

## ISSUES

The following issues are presented for our review:

I. Motisi claims that the trial court erred in preventing him from cross-examining a State witness regarding the victim's criminal record.

II. Beach and Motisi claim that the trial court erred in permitting the State to elicit testimony on rebuttal that neither Motisi nor Beach had reported being beaten, robbed, or shot at on the night in question.

III. Motisi contends that the trial court erred in refusing to grant Motisi's motion for mistrial.

IV. Beach claims that there was insufficient evidence to support his convictions.

## DISCUSSION AND DECISION

ISSUE I: *Cross-Examination*

Motisi's first allegation of error is that the trial court erred in preventing him from cross-examining a State witness regarding Riggles' criminal record. During its case-in-chief, the State called David Tison (Tison) to testify. Tison, one of Riggles's neighbors, testified during direct examination that Riggles was not a leader of a gang. Motisi informed the court that he intended to ask Tison whether he was aware of Riggles's criminal record. He argued that it was proper to inquire of Tison about Riggles's criminal record because it was evidence reflecting upon Rig-

gles's character, and the State had put his character into evidence. The trial court denied Motisi's motion to ask the question, ruling that it was not proper to impeach Riggles's character in this manner. Motisi now argues that his right to confrontation, as guaranteed by the sixth amendment, was violated. Specifically, he maintains that a witness's credibility as reflected by his bias, prejudice, interest, and motive is a proper subject of cross-examination.

We acknowledge that a witness's interest, prejudice, bias, and motive are proper subjects for cross-examination. *Hossman v. State* (1984), Ind., 467 N.E.2d 416, *cert. denied* 469 U.S. 1195, 105 S.Ct. 977, 83 L.Ed.2d 930. We are at a complete loss to comprehend, however, what Tison's knowledge of Riggles's criminal record had to do with testing Tison's credibility. At trial Motisi argued that it was proper to elicit evidence of Riggles's criminal record because it reflected upon his character. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210 permits the showing of prior offenses to impeach the character of a witness when the prior offenses are either infamous crimes or crimes involving dishonesty. The proper way to elicit evidence regarding his criminal record would have been to cross-examine Riggles about it. In fact, such examination occurred when Riggles took the stand. If Riggles would have denied having been convicted of the particular crimes, then he could have been impeached by other evidence reflecting the convictions. Even then, however, he could not be impeached by another witness's knowledge of it. We find no error in the trial court's refusal to permit Motisi to question Tison about his knowledge of Riggles' criminal record.

ISSUE II: *Rebuttal Testimony*

Beach and Motisi allege that the trial court erred in permitting certain rebuttal testimony. At their trial both Motisi and Beach took the witness stand and testified in their own defense. During direct examination they each testified that they had been shot at, beaten, and robbed and had responded in self-defense. These in-court statements were the first occasion on which they offered an exculpatory version of the incident for which they were being prosecuted. They testified further that, at the time of the incident, they were under the impression that Motisi's mother had called the police and reported that they had been shot at, beaten, and robbed. This theme was pursued on cross-examination without objection. They each stated, in answer to the State's questions, that Motisi had told his mother to call the police, and they had assumed the police were on their way. On rebuttal, the State produced the arresting officer and the officer in charge of the investigation who, over objections, stated that Motisi or Beach, to their knowledge, had never filed or made a complaint to the effect that they had been shot at, beaten, and robbed. Motisi and Beach's objection was that the fifth amendment prohibited impeachment by silence. It is important to note that the record is silent as to whether any *Miranda* warnings had been given to Motisi or Beach. Also important here is the possibility of both pre-arrest and post-arrest silence.

Traditionally, common law has allowed witnesses to be impeached by proof of prior statements inconsistent with their testimony at trial, *Music v. State* (1983), Ind., 448 N.E.2d 1082; *Clevenger v. State* (1924), 195 Ind. 45, 144 N.E. 524, by evidence of conduct inconsistent with their trial testimony, *Taggert v. Keebler* (1926), 198 Ind. 633, 154 N.E. 485, and by evidence of prior silence. *Raffel v. United States* (1926), 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that upon being taken into police custody, a suspect must be informed of his rights, including the right to remain silent. *Miranda* teaches that the prosecution cannot make reference to the fact that the defendant refused to testify based upon his fifth-amendment privilege against self-incrimination. Later the Supreme Court held that the prosecution may not use a defendant's post-arrest silence to impeach an exculpatory story told at trial. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. Both Motisi and

Beach cite *Doyle,* and *Jones v. State* (1976), 265 Ind. 447, 355 N.E.2d 402 for the assertion that the prosecutor impermissibly used their post-arrest silence and penalized them for exercising their right to remain silent.

*Doyle* involved two petitioners who were arrested and given the warnings dictated by *Miranda, supra.* At their trials, they told an exculpatory story that they had not told before to the police or the prosecutor on cross-examination. The prosecutor questioned them about their failure to give the explanation to police at the time of their arrest. The Supreme Court clearly held that the use for impeachment purposes of petitioners' silence, at the time of the arrest and after receiving *Miranda* warnings, violated due process guaranteed by the fourteenth amendment. The *Doyle* rule, however, was seriously eroded in two later cases.

*Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 was a case involving pre-arrest silence. The Supreme Court, while noting that the fifth amendment guarantees an accused the right to remain silent and prevents the state from commenting upon it, stated that it is not violated when a defendant who testifies in his own defense is impeached by his prior silence. The Court cited *Raffel, supra,* which held that a defendant who takes the stand in his own defense is subject to cross-examination impeaching his credibility just like any other witness. The Supreme Court also noted that *Harris v. New York* (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 permitted statements obtained in violation of *Miranda* and inadmissible in the State's case-in-chief to be used to impeach the credibility of the defendant if he took the stand. The Court concluded that "the fifth amendment is not violated by the use of pre-arrest silence to impeach a criminal defendant's credibility." 447 U.S. at 238, 100 S.Ct. at 2129. The rationale in *Doyle* and *Jenkins* was explained. In *Doyle* there was government action in the form of a *Miranda* warning which informed the defendant that he had a right to remain silent and that such silence could not be used against him. Therefore, to use silence so induced would be fundamentally

unfair. The Supreme Court held that, because the silence in *Jenkins* was pre-arrest silence, there was no state inducement. The Court also held that impeachment in *Jenkins* did not violate the fourteenth amendment.

Finally, the *Doyle* doctrine was further eroded in *Fletcher v. Weir* (1982), 455 U.S. 603, 102 S.Ct 1309, 71 L.Ed.2d 490, a case involving post-arrest silence. In *Fletcher,* as here, a self-defense was belatedly advanced at trial. The Supreme Court noted that the "significant difference between *Fletcher* and *Doyle* was that the record does not disclose that the defendant had received any *Miranda* warnings during the period he had remained silent immediately after his arrest." 455 U.S. at 605, 102 S.Ct at 1311. The Court determined, therefore, that the defendant was not induced by state action to remain silent. The Court held that, in the absence of affirmative assurances embodied in *Miranda,* impeachment by prior silence is permissible.

In the case at bar, three reasons exist why Motisi and Beach's argument cannot prevail. First, in their case-in-chief, each raised the subject matter of calling or the failure to call the police. They thus opened the door to inquiry on cross-examination and rebuttal to all facets of that subject. *Teague v. State* (1978), 269 Ind. 103, 379 N.E.2d 418. Second, under *Jenkins* impeachment with pre-arrest silence is permissible. Third, because the record is silent as to any *Miranda* warnings or state-induced assurances, the impeachment was permissible under *Fletcher.*

ISSUE III: *Prosecutorial Misconduct*

■ Motisi also contends that the trial court erred in refusing to grant his motion for mistrial. The State called Dawn Flowers to testify during trial. On cross-examination counsel for Beach asked her if she knew the whereabouts of several potential State witnesses, some of whom were residing in the Vanderburgh County Jail. The following colloquy ensued between the prosecutor and counsel for Beach:

> PROSECUTOR: Your Honor, I OBJECT. May we approach the Bench?

COUNSEL APPROACH BENCH

MR. MONTGOMERY: I am willing for a ruling. We've got a lot of accusations here and I would like to see these people show up to be cross-examined.

PROSECUTOR: I OBJECT to that remark. He can confine himself to the evidence, but character assassination has no role in a Courtroom and that is exactly what defense is trying to do.

MR. MONTGOMERY: You are not the one being charged.

PROSECUTOR: I am not the one that committed the crime either, Mr. Montgomery.

*Record* at 168–69.

Motisi objected and moved for a mistrial, alleging that the prosecutor had improperly injected his personal opinion about whether Motisi committed the crime in question. The prosecutor stated that the remark was inadvertent and was only a spontaneous response to a remark made by counsel for Beach. The trial court denied the motion for mistrial, admonished the prosecutor to refrain from making similar comments, and the trial resumed. Motisi argues that the statement constitutes reversible prosecutorial misconduct.

█ We are unpersuaded that reversible error exists. The granting or denial of a mistrial is left to the discretion of the trial court and will be disturbed only for manifest abuse of that discretion. *Fultz v. State* (1985), Ind.App., 473 N.E.2d 624; *Didio v. State* (1984), Ind., 471 N.E.2d 1117. Granting of a mistrial is an extreme sanction and is warranted only when no other action can be expected to remedy the situation. *Didio, supra.*

█ Here, the alleged error is predicated upon the prosecutor's remarks at trial implying that he believed Motisi committed the offense charged. Before reversible error exists, the misconduct in question must place the defendant in a position of grave peril to which he should not have been subjected. Grave peril is determined by the probable, persuasive effect of the misconduct, on the jury's decision. *Riley v. State* (1981), Ind., 427 N.E.2d 1074. The effect of this remark on the jury is extremely questionable. By the very nature of the proceedings, the jury was exposed to the fact that the prosecutor had investigated the case, approved the information, brought Motisi to trial, and presented evidence against him. Only the most naive juror would not have already concluded that the prosecutor believed Motisi had committed the offenses charged. While we do not condone the prosecutor's statement, it added nothing. We find no error.

ISSUE IV: *Sufficiency of the Evidence*

Beach was convicted of two counts of both attempted battery and criminal recklessness. The first count of each offense named the victim as Riggles, while the second count of each offense named the victim as Doris Flowers. He claims that the evidence is insufficient to support his convictions. We disagree.

On appeal, we neither reweigh the evidence, nor judge the credibility of the witnesses. Rather, we will consider only the evidence most favorable to the judgment, along with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the verdict, it will not be overturned. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672; *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 750.

IND.CODE 35–41–5–1 provides in pertinent part:

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

IND.CODE 35–42–2–1(3) explains that a person commits battery, a Class C felony, if he knowingly or intentionally touches another in a rude, insolent, or angry manner by means of a deadly weapon. Finally, IND.CODE 35–42–2–2 provides in relevant part:

(a) A person who recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person commits criminal reck-

lessness, a class B misdemeanor. However, the offense is a:

....

(2) Class D felony if it is committed while armed with a deadly weapon.

 Beach first claims that the State failed to present evidence establishing that he possessed the specific intent to commit attempted battery and criminal recklessness with respect to Riggles. Specifically, he maintains that there is no evidence proving that he had knowledge Motisi intended to fire shots at Riggles. IND.CODE 35–41–2–4 states, as applicable here:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense

....

Our supreme court has held that one who aids or induces another to commit an offense can be charged with that offense and convicted as a principal. *Harris v. State* (1981), Ind., 425 N.E.2d 154. Furthermore, the trier of fact may consider affirmative conduct from which reasonable inferences of a common design or purpose to effect the commission of a crime might be drawn when determining whether a person aids another to commit an offense. *Buhrt v. State* (1980), 274 Ind. 370, 412 N.E.2d 70. The evidence here is sufficient to prove that Beach knowingly aided Motisi. Prior to the shooting several witnesses testified that Beach announced that he was going to go get his gun before he and Motisi left the scene. They testified further that when they returned, Beach, who was still driving, exited the vehicle, as did Motisi armed with a rifle, and began yelling at people in their homes. One witness also testified that at this point Beach stated that "anybody in the street would be shot." *Record* at 313. Finally, Motisi fired the rifle several times, including one shot aimed at Riggles. The evidence is sufficient to support Beach's convictions for attempted battery and criminal recklessness with respect to Riggles.

 Beach also contends that the State failed to produce sufficient evidence of probative value to support his convictions for attempted battery and criminal reckless-

ness with respect to Doris Flowers. Beach argues that he drove upon the sidewalk in order to protect Motisi. In essence Beach asks us to judge the credibility of the witnesses and reweigh the evidence. This we will not do. *Alfaro, supra; Zachary, supra.* Witnesses for the State testified that Beach drove his car on the sidewalk in front of Riggles' home at approximately 30–40 m.p.h., nearly striking several people. These witnesses testified further that Beach turned his car around, returned to the scene, and, driving upon the sidewalk, narrowly missed Doris Flowers as she jumped from the car's path. The evidence is sufficient to support his convictions for attempted battery and criminal recklessness with respect to Doris Flowers.

For the above reasons the decision of the trial court is affirmed.

Judgment affirmed.

RATLIFF, C.J., and CONOVER, J., concur.