Tommy G. **MILLER**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 49S00–8712–CR–1146.

Supreme Court of Indiana.

Sept. 21, 1989.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Burglary, a Class B felony, for which he received a sentence of ten (10) years enhanced by thirty (30) years by reason of his status as an habitual offender; Auto Theft, a Class D felony, for which he received a sentence of two (2) years; and Theft, a Class D felony, for which he received a sentence of two (2) years, the sentences to run consecutively.

The facts are: At approximately 3:00 a.m. on May 24, 1986, Brenda and Pete Papadakis were awakened by a noise in their home. As they watched from an upstairs window, they observed someone drive away in their car. They went downstairs and found that numerous items were missing. They immediately called police,

and a short time later Officers Guthier, Swarm, and Scrogham observed the Papadakis vehicle proceeding down the street.

The officers pursued the vehicle until it made a turn into an alley. The driver exited the car and jumped over a fence in an attempt to escape. However, the officers were able to apprehend appellant without losing sight of him. They conducted a search of appellant's person and found two lady's rings, two gold bracelets, a lady's watch and earrings, two checkbooks, two ink pens, an electronic calculator, and a jewelry receipt with Pete Papadakis' name on it. They also found $63.93.

Pete Papadakis testified that the items taken from appellant's person, as well as items found in the automobile, belonged to him and his wife.

Appellant testified that at approximately 2:00 a.m. he walked from a friend's home to a service station located at 38th Street and Capitol Avenue in Indianapolis, where he met a person who wanted to sell him a car. He stated his girlfriend was present when he looked at the car. He further testified that at approximately 2:30 a.m. he began to walk downtown and that he stopped, sat on a car, and was drinking a beer when a car (the Papadakis car) turned into the alley where he was. He watched as a man got out of the car and ran. When police arrived, appellant said he jumped from the parked car but was arrested by the police officers.

Appellant claims he was denied effective assistance of counsel. He details a number of shortcomings in defense counsel's performance. Many of these deficiencies are listed in an affidavit made by his defense attorney, John Thrasher. The ninth paragraph of the affidavit reads:

"I believe I did not exercise the degree of skill and diligence required of a reasonably skillful and competent criminal defense attorney in preparing the defense of Tommy Miller against the charges pending in this action, and that there is a high probability that the outcome of the State's prosecution would have been much more favorable to Mr.

Miller had I done those things which hindsight now reveals to me."

In his affidavit, Mr. Thrasher states that from the information furnished him by appellant he was aware that appellant was claiming he was an innocent bystander when the automobile appeared in the alley and that he had a possibility of an alibi defense. However, when one examines the record in this case, it is apparent that appellant could account for his time only up until 2:30 a.m. as far as the possibility of other people verifying his whereabouts was concerned.

The offenses in this case were committed at approximately 3:00 a.m. some one-half hour after appellant claims his whereabouts could be verified. Coupled with this are the facts that a few minutes after the crime had been reported, police officers pursued the stolen vehicle, observed appellant exit therefrom, and captured him without him ever leaving their sight. Further, that a personal search of appellant disclosed he had some personal possessions of the Papadakis' in his pockets.

■ Even if we would accept Mr. Thrasher's statement that he should have pursued an alibi defense, such a defense appears totally unrealistic within the facts of this case. Thrasher also says that appellant informed him that he had filed a *pro se* post-conviction relief petition in one of his prior felonies but that it had been dismissed and the judge had advised him to get counsel to aid him in pursuing the matter. He asked Thrasher to do so. However, he says he did not pursue the matter.

The record in this case shows numerous prior felonies, all of which are fully documented as to time of commission and time of sentencing. There is no doubt that the setting aside of any one of these prior felonies would not have been sufficient to forestall the finding of an habitual offender status.

■ Appellant questions the fact that there was no arraignment on the habitual offender charge. Thrasher claims that he was unaware at the time that an arraign-

ment was in order; by Thrasher's own statement, however, he was fully aware that the charge was pending and consulted with appellant concerning his prior offenses. There is nothing demonstrated in appellant's brief or in this record that would indicate that the end result would have been any different had the full procedural requirements been met.

In appellant's brief, they list additional allegations against Mr. Thrasher's performance as defense counsel, one being that he permitted his client to appear in court ready for trial wearing a tank shirt. The judge questioned appellant appearing in court in what the judge described as an "undershirt." However, appellant and counsel indicated that no other clothing was available and that appellant chose to appear as dressed. Appellate counsel takes the position that Mr. Thrasher should have seen to it that his client was properly dressed before coming to Court.

Appellate counsel also claims Mr. Thrasher erred in failing to make any objection to an extrajudicial statement made by appellant. At the time of his arrest, the police officers gave appellant his *Miranda* warnings, to which he replied that he meant no harm and that he was trying to support a $200 to $300 cocaine habit. However, counsel makes no claim that the *Miranda* warnings were not given or that the statement was in any way forced or untrue.

■ Appellate counsel also points out that Mr. Thrasher made no objection to State's Exhibits No. 30 through 37, which were the documents verifying appellant's numerous prior felony convictions. Counsel points out that the exhibits in fact were read to the jury before they were introduced into evidence, which of course is a technical violation of procedure. However, counsel makes no attempt to say the exhibits were not admissible and does not demonstrate to us on what ground any objection would have prevailed. The technical error of reading the contents of the exhibits to the jury before they were introduced into evidence is not sufficient to warrant a reversal in this case.

Counsel further points to Mr. Thrasher's cross-examination of Mr. Papadakis concerning the manner in which the house was entered. Appellant claims that Thrasher's conduct merely aided the State in presenting Papadakis' explanation of how the house was entered. It is true that Mr. Thrasher's cross-examination of Papadakis falls far short of being skillful. However, in view of the facts above recited, and the detailed and articulate direct testimony of Papadakis, Mr. Thrasher's unskillful cross-examination hardly can be perceived as being a turning point in the case.

There is no question that Mr. Thrasher's defense of appellant was less than skillful, and we have his word on it by way of his affidavit. However, appellant's counsel has been unable to demonstrate what a more skillful attorney might have done to have changed the result in this case. As this Court has stated before, the proof of ineffectiveness of counsel must establish not only that counsel's conduct was deficient but that it also resulted in prejudice to the defendant and rendered the judgment unreliable. *See Lopez v. State* (1988), Ind., 527 N.E.2d 1119.

We see no place in this record where the most skillful of counsel would have been successful in excluding the State's evidence against appellant. The direct and circumstantial evidence of appellant's guilt is overwhelming. Mr. Thrasher's statement in his affidavit that "there is a high probability that the outcome of the State's prosecution would have been much more favorable to Mr. Miller had I done those things which hindsight now reveals to me" is patently in error.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., concurs in result without separate opinion.