John E. ZEILINGA, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8908–CR–607.

Supreme Court of Indiana.

June 19, 1990.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for the crime of Robbery, a Class B felony, for which he received a sentence of fifteen (15) years, three convictions of Confinement, Class B felonies, for which he received three sentences of fifteen (15) years each, and Carrying a Handgun Without a License, a Class A misdemeanor, for which he received a sentence of one (1) year, all sentences to be served consecutively.

The facts are: On the evening of December 11, 1987, Anthony and Linda Pavey were in their home in Indianapolis with their 2-year-old son. Also present was Brian Spencer, who was visiting them. Mrs. Pavey answered a knock on the door, and a man later identified as appellant forced his way into the house, brandished a gun and a badge, and announced, "This is a bust. [G]et to the floor."

The actions of appellant caused the Paveys and Spencer to believe they were being accosted by a police officer. While they lay on the floor, the robber bound them with electrical plastic straps. When Mrs. Pavey attempted to go to the aid of her crying child, she was not permitted to do so.

After binding the victims, the robber removed money from Mr. Spencer, searched the house, and then took money from Mrs. Pavey's purse which was on the dining room table. He then jerked the telephone from the wall and stated, "I'll be right back." The victims of course realized they had been robbed. They eventually freed themselves and summoned police.

On January 4, 1988, Indianapolis Police Officer Jack Geilker was conducting a surveillance of the Kit Kat Lounge in Indianapolis on a tip that a robbery was about to take place. When Officer Geilker entered the lounge, an informant immediately introduced him to appellant. Appellant indi-

cated to Officer Geilker that he was looking for two men to help him execute two robberies. He indicated that he wanted to rob a place in the 600 block of South Spencer to make sure that the two men were "worthy." He indicated that they would pose as police officers, knock on the door or, if necessary, kick the door open, tie up the victims, and rob them of their cash and cocaine.

Appellant next indicated they would rob a bookstore owner of $78,000. He promised that each of the two men would receive a percentage of the loot. Appellant then suspected that Officer Geilker was a police officer and searched him in the restroom. When he found a paging device on the officer, he took the informant into the restroom and beat him. Officer Geilker gave this information to Detective Thomas Breen, who was investigating the December 11 robbery at the Pavey residence.

On January 7, 1988, Detective Breen separated Mr. Spencer, Mr. Pavey, and Mrs. Pavey into three rooms at Pavey's home before showing each of them a six-photograph array that included appellant's photograph. The photographs were rearranged before showing the array to each victim. After studying the photographs, Mr. Pavey selected appellant's photograph as that of the person who had robbed them. Mr. Spencer also identified appellant's photograph. Mrs. Pavey said that she could not pick out the robber from the array of photographs. However, she felt that she would be able to identify the robber if she saw him in person. Before leaving, Detective Breen instructed each of the victims not to discuss the array with one another.

In March of 1988, Detective Breen arranged for each of the victims to view a lineup which included the appellant. Those present at the lineup included the two police officers, the prosecutor, the victims, and counsel for appellant. Each victim was provided with a lineup sheet to identify the robber. The victims were separated and observed by police officers to make sure that they did not talk with one another. Upon viewing the lineup, each of the three victims identified appellant as the robber.

Appellant claims the trial court erred in allowing the photographic array which had been shown to the victims to be introduced in evidence. This array of course included the photograph of appellant. Each person depicted in the photographs had an Indianapolis Police Department identification card suspended from a chain around his neck. However, this placard was covered by a card which was stapled only at the bottom. Appellant concedes that it is proper to use police photographs provided that the information showing them to be police photographs is properly covered, citing *Beadin v. State* (1989), Ind., 533 N.E.2d 144.

However, appellant claims the photographs were not covered properly because the card stapled only at the bottom could be lifted very easily from the top to disclose the police identification information on the photograph. The photographs are contained in this record and appellant's contention in this regard is readily demonstrated. The State's attempt at covering the photographs is wholly inadequate. Appellant observes that this defect becomes even more detrimental to him in view of the fact that the trial court permitted the photographs to be taken to the jury room with the other evidence. However, no objection was made to the introduction of these exhibits; therefore, any error based upon their admission has been waived. *Lee v. State* (1988), Ind., 519 N.E.2d 146; *Robbins v. State* (1968), 251 Ind. 313, 241 N.E.2d 148.

Nevertheless, appellant claims that the introduction of the exhibits was so detrimental to his case as to constitute fundamental error. This Court has previously held, however, that when mug shots are introduced without objection, all error based thereon is waived. *Id.; Hudson v. State* (1984), Ind.App., 462 N.E.2d 1077.

We further would observe that the information contained on appellant's photograph consisted only of a gallery number, his age, height, weight, and the date the photograph was taken. We also would note that

the date the photograph was taken is subsequent to the date of the instant offenses although it is in fact prior to his arrest for the instant offenses.

If we engage in the presumption that the jurors in fact did lift the stapled card and read the information contained thereon, they were left to speculate whether appellant in fact had committed any crimes prior to the instant charges. There is no question that had an objection been made to the manner in which the "mug shot information" on the exhibits was covered, it should have been sustained and the information more securely covered.

We have held previously that we will find fundamental error "only when a blatant violation of basic and elementary principles has occurred, and the harm or potential for harm could not be denied." *Lewis v. State* (1987), Ind., 511 N.E.2d 1054, 1057. We cannot say that the improper covering of the mug shot information constituted fundamental error under the circumstances of this case.

Appellant contends there is insufficient evidence to support the verdict of the jury. Appellant bases this contention on the question of the identification of him as the perpetrator of the crimes. He takes the position that the' photographic lineup displayed to the victims was too suggestive to be valid. However, as set out above, extreme care was exercised by the police officers to maintain separation of the victims at the time the photographs were displayed.

■ Although it is true that Mrs. Pavey did not identify appellant's photograph, both Mr. Pavey and Mr. Spencer identified appellant's photograph as that of the perpetrator. There is no evidence in this record that there was any undue suggestion made to any of the victims prior to or during the viewing of the photographs. We further would point out that Mrs. Pavey made the statement at the time of the viewing that she could not identify the perpetrator from any of the photographs. However, she felt sure that if she could see him in person she would recognize him.

■ Later, when police arranged a lineup identification, the victims again were kept separate and asked to mark the sheet furnished by the police officers to indicate what person, if any, in the lineup was the perpetrator. Appellant's attorney was present at the time of the lineup. Each of the victims separately identified appellant as the perpetrator. Under these circumstances, the question of the identity of appellant was a matter of fact to be weighed by the jury and will not be second-guessed by this Court. *See Whitt v. State* (1986), Ind., 499 N.E.2d 748.

■ Appellant contends the trial court erred in rendering four consecutive fifteen (15) year prison terms for the robbery and the three counts of confinement. He claims the court did not state sufficient aggravating circumstances to justify the sentences and that the Court failed to take into consideration mitigating circumstances. The trial court took into consideration that appellant had left the adult victims bound and a 2–year–old child unattended on the premises. The trial court also found as an aggravating circumstance that appellant had a record of "ten prior arrests as an adult." Appellant takes issue with this statement claiming that prior arrests should not be considered.

However, when one examines the presentence investigation, it is disclosed that appellant had five prior convictions and had been committed to the Indiana Boys School as a juvenile. The trial judge further found as an aggravating circumstance that in perpetrating the crime appellant had impersonated a police officer. Appellant now argues that it was improper for the trial court to consider non-statutory aggravating circumstances.

However, the statute specifically states: "The criteria listed in subsections (b) and (c) do not limit the matters that the court may consider in determining the sentence." Ind.Code § 35–38–1–7(d).

As far as mitigating circumstances are concerned, such are entirely within the trial court's discretion. There is no duty to negate potential mitigating factors. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, *cert.*

*denied,* — U.S. —, 109 S.Ct. 3165, 104 L.Ed.2d 1028. Unless a sentence is manifestly unreasonable, this Court will not modify it as long as it complies with the statute. *Henley v. State* (1988), Ind., 522 N.E.2d 376. We find no error in the trial court's sentencing of appellant.

Appellant claims there is fundamental error in that he was deprived of effective assistance of counsel. To prevail in this claim, appellant must show that his attorney's performance was deficient and that his defense was prejudiced by the deficient performance. *Townsend v. State* (1989), Ind., 533 N.E.2d 1215.

■ Appellant contends his trial counsel's performance was inadequate in that he did not present an alibi defense, which appellant strongly urged. In a pretrial hearing conducted in this case, appellant's trial counsel brought to the attention of the trial court that appellant had urged him to present an alibi defense. Counsel stated that he had interviewed the woman who lived in the residence where appellant claimed to have been at the time of the crime. However, counsel stated that the witness told him that although appellant had been to her house at other hours on days she could not positively identify, he had never been at her house around the hour of 6:00 in the evening which was the time of the instant crime.

Counsel also stated that he learned that another woman whom appellant identified as having been at the house at the same time he was there no longer lived in the area and was not available. This record clearly indicates that counsel had taken all reasonable steps to attempt to establish alibi evidence but was unable to do so.

Appellant also claims that trial counsel did not properly supervise the lineup at which he was identified. As previously stated, the lineup was conducted in a proper fashion. We cannot perceive of any action counsel could have taken under the circumstances.

Appellant also contends his trial counsel was ineffective in that he failed to object to the introduction of the photographic array which had been displayed to the victims.

As pointed out above, the photographic array was covered inadequately to mask the identity of the photographs as mug shots. Although the information is covered, it is quite simple to turn the card down and observe the objectionable information.

However, as indicated above, in appellant's case the photograph was taken after the occurrence of the instant crime and identifies no offense. If counsel had made an objection at that time to the manner of the coverage of the information, the trial court undoubtedly would have sustained his objection and required the State to prepare the photographs properly. We cannot say that counsel's decision not to make an issue of this matter constituted deficient performance.

In view of the evidence in this case it stretches credulity to believe that the decision of the jury turned upon the presence of mug shot information on appellant's photograph included among the exhibits. This record discloses that counsel performed within the framework set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.