**David M. JONES, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 48A02–8912–CR–638.

Court of Appeals of Indiana, Second District.

April 15, 1991.

William D. McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant David Jones (Jones) appeals from his conviction for recklessness [1] and the determination that he was an habitual class D felony offender,[2] claiming that the evidence was insufficient to sustain his conviction, that the trial court erred when it admitted evidence, that he was charged and sentenced under the wrong habitual offender statute, and that he received ineffective assistance of counsel.

We affirm.

## FACTS

The facts most favorable to the jury's verdict reveal that the victim, Jones' ex-wife, saw Jones at her place of employment, a bar, on *July 19, 1988.* Jones had a bulge in his shirt which appeared to be a gun. Jones left the bar and telephoned the victim, threatening to shoot her. The victim notified the police of Jones' threat, and she left work early.

On the way home, while stopped at a stop sign, the victim noticed Jones in a car in the adjoining lane. Jones was sitting with his head and torso out of the vehicle, which was being driven by a young woman and which also contained one other passenger. Jones pointed his gun at the victim and fired three shots in the direction of her car. The car then sped away.

Jones was arrested and charged with recklessness, a class D felony. Jones was also alleged to be an habitual class D felony offender on the basis of his *1979* conviction for possession of marijuana, a class D felony, and his *1982* conviction for operating a motor vehicle while an habitual traffic offender, a class D felony. After a trial by jury on August 7th and 8th, 1989, Jones was convicted on both counts and he received a four-year term of imprisonment for his recklessness conviction, enhanced by eight years due to his status as an habitual class D felony offender, for a total term of imprisonment of twelve years. Thus he was sentenced under the D Felony Statute, *infra.*

## ISSUES

1. Whether Jones was prosecuted under the proper habitual offender statute?
2. Whether the evidence was sufficient to sustain Jones' recklessness conviction?
3. Whether the trial court properly sustained the State's objection during cross-examination?
4. Whether the trial court properly overruled Jones' objection during questioning of victim?
5. Whether the trial court erred during rebuttal and surrebuttal testimony?
6. Whether Jones received ineffective assistance of counsel?

## DECISION

ISSUE ONE—Was Jones prosecuted under the proper habitual offender statute?

PARTIES' CONTENTIONS—Jones argues that the habitual offender statute under which he was prosecuted did not apply to him because his prior felonies were committed before that statute was enacted in 1985, citing *Moncrief v. State* (1988), Ind.

---

1. Ind.Code 35–42–2–2 (1988).

2. Ind.Code 35–50–2–7.1 (1988).

App., 525 N.E.2d 1286. The state responds that the statute applies to Jones because the underlying felony with which he was charged was committed on July 19th, 1988, after the effective date of the statute.

CONCLUSION—Jones was prosecuted under the proper statute.

 The resolution of Jones' argument is aided by historical perspective. We must examine the 1984 habitual offender statute, its 1985 reincarnation and the 1985 habitual class D felony offender statute which was added by a 1985 amendment to the habitual offender statute. We must also consider the effect of an uncodified savings clause included in the 1985 amending legislation.

In 1984, IC 35–50–2–8 (1984) [hereinafter referred to as the Habitual Offender Statute] provided for sentencing defendants as habitual offenders without distinguishing between different classes of felonies.

In 1985, the legislature enacted P.L. 328–1985, which added the habitual class D felony offender statute, IC 35–50–2–7.1 (1985) [hereinafter referred to as the D Felony Statute], and which amended the Habitual Offender Statute. The D Felony Statute created a new class of habitual offender, the "habitual Class D felony offender," which consisted of defendants who had an underlying class D felony conviction and whose prior, unrelated enhancing felonies were also class D felonies. The D Felony Statute reduced the maximum enhancement from 30 years under the 1984 Habitual Offender Statute to 8 years. The Habitual Offender Statute was modified and amended with section (h), which provided: "A person may not be sentenced as an habitual offender under this section if *all* of the felonies relied upon for sentencing the person as an habitual offender *are Class D felonies.*" IC 35–50–2–8(h) (emphasis supplied).

The enacting legislation, P.L. 328–1985, contained the following uncodified *savings clause:*

"SECTION 3. (a) The addition of IC 35–50–2–7.1 and the amendment of IC 35–50–2–8 by this act do not affect any:

(1) rights or liabilities accrued;

(2) penalties incurred; or

(3) proceedings begun;

before September 1, 1985. The rights, liabilities, and proceedings are continued and punishments, penalties, or forfeitures shall be imposed and enforced under IC 35–50–2–8 as if this act had not been enacted.

(b) If *all* of the felonies relied upon for sentencing a person as an habitual offender *under IC 35–50–2–8* are felonies that were committed before *September 1, 1985,* the felonies shall be prosecuted and remain punishable under IC 35–50–2–8 as if this act had not been enacted." (Emphasis supplied).

Jones asserts that section (b) [hereinafter referred to as the Savings Clause] prohibits the State from prosecuting and sentencing him as an habitual class D felony offender because his prior class D felony convictions were committed before September 1, 1985 (i.e. 1979 and 1982). Therefore, he claims, he was tried and sentenced under the wrong statute and his sentence must be vacated.

 In reviewing a statute, we must give effect and meaning to every word, if possible, and no part should be held meaningless if it can be reconciled with the rest of the statute. *Guinn v. Light* (1990), Ind., 558 N.E.2d 821; *Spaulding v. Int'l Bakers Serv., Inc.* (1990), Ind., 550 N.E.2d 307. A statute should not be viewed as if the reader is peering at it through a keyhole. It must be read with its companions.

We first observe that the Savings Clause, by its own terms, applies only when sentencing a person *under the Habitual Offender Statute.* Jones was sentenced under the D Felony Statute, so by a plain reading of the statute, it would appear the Savings Clause is not relevant to Jones' sentencing.

Reading the Savings Clause as Jones suggests would make meaningless, and give no effect to, the phrase "under IC 35–50–2–8" used in the clause. As it is possible to give meaning to that phrase by applying the Savings Clause *only* to defendants sentenced under the Habitual Offender Statute, we must do so. *Guinn, supra; Spaulding, supra.* Therefore, we

conclude that because Jones was sentenced under the D Felony Statute, the Savings Clause did not apply and that he was properly sentenced.

Even if we concluded the Savings Clause applied to sentencing under the D Felony Statute, the State persuasively argues that Jones' convictions do not satisfy the Savings Clause. The State points out that under the Savings Clause, *all* of the felonies relied upon for sentencing must have been committed before September 1, 1985. Jones' underlying conviction for recklessness, a class D felony, was committed on July 19, 1988. As Jones' underlying felony, which was enhanced due to his prior, unrelated class D felony convictions, was not committed before September 1, 1985, the Savings Clause does not apply to Jones.

A fair reading of both the D Felony Statute and the Habitual Offender Statute together indicates that "all," as used in the Savings Clause, refers to a defendant's *underlying* felony conviction as well as the enhancing felony convictions. This is in keeping with section (h) of the Habitual Offender Statute which provides that a defendant could not be sentenced under the Habitual Offender Statute if *"all* of the felonies relied upon for sentencing the person as an habitual offender are Class D felonies." IC 35–50–2–8(h) (emphasis supplied).

■ The D Felony Statute applies only to defendants whose *underlying* felony convictions, as well as their enhancing convictions, are class D felonies. IC 35–50–2–7.1(b). Section (h) of the Habitual Offender Statute was added to provide for mutually exclusive habitual offender statutes, so that defendants entitled to the less severe sentencing provisions of the D Felony Statute would not also be eligible to be sentenced under the Habitual Offender Statute as well. The D Felony Statute and the Habitual Offender Statute are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Sanders v. State* (1984), Ind., 466 N.E.2d 424; *Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, *trans. denied.* The only harmonious construction of these two statutes requires that "all," as used in section (h), be construed as including underlying felonies.

This construction of "all" in section (h) was recognized by the supreme court in *Moredock v. State* (1987), Ind., 514 N.E.2d 1247. In *Moredock,* the defendant was convicted of three underlying class B felonies and was adjudged an habitual offender on the basis of two prior class D felony convictions. The defendant argued that section (h) of the Habitual Offender Statute precluded his habitual offender determination because it was based on two prior class D felony convictions. The supreme court rejected the defendant's contention:

"Moredock is incorrect that subsection (h) applies to him since all of the felonies relied upon for sentencing him were not class D felonies. Though the two previous unrelated felonies were class D, the present case for which he is being sentenced resulted in three convictions for class B felonies. Thus, subsection (h) does not apply to the instant case."

*Id.* at 1251.

■ The Savings Clause uses "all" in precisely the same context as it is used in section (h) of the Habitual Offender Statute. Both refer to *"all* of the felonies relied upon for sentencing...." Where words are used one place within a statute, they will be construed as used in that same sense at other places in the statute, unless the clear context of the statute requires a different meaning. *Indiana Tel. Ass'n v. Pub. Serv. Comm'n* (1985), Ind.App., 477 N.E.2d 911. Thus "all" as used in the Savings Clause includes underlying as well as enhancing felonies.

Because Jones' underlying felony was committed on July 19, 1988, "all" of the felonies relied upon to sentence him were not committed *before* September 1, 1985. So the Savings Clause is inapplicable and he was properly sentenced as an habitual class D felony offender.

The Indiana Supreme Court supported this interpretation when it considered another factual situation to which the Savings Clause was intended to apply. In *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, the supreme court had before it a claim by a defendant who had been convicted of a

class D felony and was adjudged to be an habitual offender under the 1984 Habitual Offender Statute on the basis of two prior, unrelated class D felony convictions. In rejecting the defendant's assertions that he should have been sentenced under the D Felony Statute, the supreme court observed that the defendant's underlying felony, as well as his enhancing felonies, *all* were committed *before September 1, 1985.*

Applying the Savings Clause, the supreme court construed the legislature's unambiguous intent: "It excludes *any* felonies committed before the effective date of September 1, 1985." *Hensley, supra* at 1055 (emphasis supplied). The supreme court's use of "any" as modifying "felonies committed" unmistakably refers only to underlying and not enhancing felonies. If "any felonies" referred to enhancing felonies, the supreme court could have declared the Savings Clause applied to defendants with only one enhancing felony committed before September 1, 1985, which is obviously not its meaning. In effect, the supreme court, in *Hensley,* determined that the Savings Clause applied *only* to defendants with *underlying* felonies committed prior to September 1, 1985.

As our supreme court recognized in *Hensley,* the D Felony Statute is an ameliorative statute. It was designed to lessen the impact of habitual offender sentencing for defendants who habitually commit only class D felonies. To construe the statute as Jones asks would deny the benefits of the D Felony Statute to defendants who commit class D felonies after its effective date. We do not believe such a construction effectuates the intent of the legislature, and it taxes our credibility to think defendants would prefer to face a possible 30 year enhancement under the 1984 Habitual Offender Statute.

Having concluded that the Savings Clause does not apply to Jones, and that he was properly sentenced as an habitual class D felony offender, we are aware that this conclusion is at odds with this court's decision in *Moncrief, supra.* In *Moncrief,* it was held that the Savings Clause barred the State from prosecuting a defendant under the D Felony Statute because the defendant's prior enhancing felonies were committed before September 1, 1985, even though the defendant's underlying felony was committed after that date. In light of the foregoing analysis we cannot agree with that decision.

ISSUE TWO—Was the evidence sufficient to sustain Jones' recklessness conviction?

PARTIES' CONTENTIONS—Jones argues that the evidence was insufficient to sustain his conviction because there was no evidence that any of the shots fired actually hit the victim's car. The State responds that the evidence demonstrated that Jones shot *at* the victim, which is sufficient to sustain his conviction.

CONCLUSION—The evidence was sufficient.

The uncorroborated testimony of one witness is sufficient to sustain a conviction, even if the witness is the victim. *Ferrell v. State* (1991), Ind., 565 N.E.2d 1070; *Henley v. State* (1988), Ind., 522 N.E.2d 376. The victim testified Jones fired three shots in her direction. *Record* at 183–84. This is enough. *See Beach v. State* (1987), Ind.App., 512 N.E.2d 440, *trans. denied; Upp v. State* (1985), Ind. App., 473 N.E.2d 1030.

Jones attacks the victim's testimony as not worthy of credibility because the "physical facts" did not support her assertions. Specifically, Jones postulates that if he had fired three shots at the victim, as she claimed, he would have hit her car. Therefore the "physical facts" do not support her testimony.

The State, however, did not need to prove Jones' shots hit the victim's car to establish he was guilty of recklessness. IC 35–42–2–2(b) provides, in pertinent part:

"A person who recklessly, knowingly, or intentionally performs:

 (1) an act that creates a substantial risk of bodily injury to another person;

 ...

commits criminal recklessness...."

There is no requirement that a defendant's actions result in damage to people or property. Jones' argument is simply a request for us to judge the credibility of witnesses

and reweigh evidence. The evidence was sufficient. *See Upp, supra.*

ISSUE THREE—Did the trial court properly sustain the State's objection during cross-examination?

PARTIES' CONTENTIONS—Jones says the trial court erred when it sustained the State's objection when Jones asked a police officer if a person the officer had questioned had indicated Jones' whereabouts at the time of the crime. The State responds that Jones' alibi evidence had been excluded and that the question was improper.

CONCLUSION—The trial court did not err.

■ The trial court is allowed to control the conduct of cross-examination, and we will reverse only when the trial court has abused its discretion. *Williams v. State* (1986), Ind., 492 N.E.2d 28; *Thompson v. State* (1990), Ind.App., 555 N.E.2d 1301, *trans. denied.*

■ Because the trial court allowed the officer to testify concerning some of the statements made by a potential alibi witness, the trial court need not necessarily admit the entire conversation with the potential witness. The officer testified that when he had attempted to arrest Jones, Jones had left in the potential witness's car. The officer followed the car, but Jones jumped from the car and fled. The officer learned of Jones' maneuver after interviewing the potential witness. *Record* at 161. On cross-examination, Jones attempted to elicit from the officer the potential witness's statements concerning Jones' whereabouts during the crime, to which the State's objection was sustained. *Record* at 165.

■ A party may not establish his defense by cross-examining a witness beyond the scope of direct examination. *Solomon v. State* (1982), Ind., 439 N.E.2d 570. Further, if a defendant fails to file a notice of alibi in accordance with Ind.Code 35–36–4–1 (1988), the trial court *shall* exclude any alibi evidence offered by the defendant. *Adkins v. State* (1989), Ind., 532 N.E.2d 6; IC 35–36–4–3(b). As Jones failed to comply with IC 35–36–4–1, *record* at 269–70, the trial court properly sustained the State's objection.

ISSUE FOUR—Did the trial court properly overrule Jones' objection during questioning of the victim?

PARTIES' CONTENTIONS—Jones contends that trial court erred when it allowed the State to ask the victim why she didn't want Jones to know where she worked. The State replies that the evidence was relevant and within the trial court's discretion.

CONCLUSION—The trial court properly overruled Jones' objection.

■ The admission of evidence is within the trial court's sound discretion, and evidence which is only marginally relevant is admissible. *Martinez v. State* (1990), Ind., 549 N.E.2d 1026. The victim testified that she did not want Jones to know where she was working because she was afraid he might harm or threaten her. *Record* at 170. This explains the victim's actions after she had seen Jones at her place of employment. It was relevant to her report to the police and her decision to leave work early. *Record* at 176–78. We cannot conclude the trial court abused its discretion when it allowed this testimony to be admitted.

ISSUE FIVE—Did the trial court properly allow rebuttal and surrebuttal testimony?

PARTIES' CONTENTIONS—Jones says the trial court erred when it overruled his objection to the State's questions during rebuttal, and that the trial court improperly sustained the State's objection during surrebuttal. The State responds that its questions elicited proper rebuttal evidence and that Jones sought to exceed the scope of the rebuttal evidence.

CONCLUSION—There was no error.

During the trial, evidence was admitted that the victim and others had received threatening phone calls from Jones while he was incarcerated. Jones testified that he had never made a three-way telephone call from jail. *Record* at 350. Evidence was introduced that established defendants incarcerated in the Madison County Jail, where Jones was detained prior to trial, could only make collect telephone calls from the jail. If the recipient of a call was

able to make three-way calls, a defendant could make numerous calls through the third party without having to use an operator to place collect calls. *Record* at 363–65.

On rebuttal, the State produced a witness that testified he had received several three-way calls from Jones while he was incarcerated. *Record* at 440–42. When establishing the witness's ability to identify Jones as the caller, the witness related several threats Jones had made during the calls. Jones objected, claiming the evidence was not proper rebuttal evidence. *Record* at 447.

Rebuttal evidence is that which tends to explain, contradict or disprove an adversary's evidence, and the scope of rebuttal is within the sound discretion of the trial court, which will only be reviewed for an abuse of that discretion. *Smith v. State* (1990), Ind., 553 N.E.2d 832; *Heck v. State* (1990), Ind., 552 N.E.2d 446.

The witness's testimony concerning Jones' calls and threats contradicted Jones' claim that he did not make any three-way calls from jail, and the witness's testimony concerning the specific threats made related to the witness's ability to identify the caller as Jones. As the testimony was proper rebuttal evidence, the trial court did not err when it overruled Jones' objection.

Jones then sought to introduce surrebuttal evidence that he had threatened the witness to protect his girlfriend. *Record* at 478–79. The State objected and the trial court did not allow the evidence to be admitted. The offered evidence, however, would not have rebutted the witness's claim that Jones made three-way calls, rather, it would have confirmed that Jones was less than candid when he testified he had not made any three-way calls from jail. As the offered surrebuttal evidence was not relevant to the scope of the State's rebuttal evidence, we cannot conclude the trial court abused its discretion when it refused to allow the surrebuttal testimony. *See Sipress v. State* (1990), Ind.App., 562 N.E.2d 758.

ISSUE SIX—Did Jones receive ineffective assistance of counsel?

PARTIES' CONTENTIONS—Jones asserts that his counsel was ineffective because he failed to file a notice of alibi and because he brought out damaging evidence on cross-examination. The State responds that the evidence shows that Jones' counsel pursued an alibi defense as best as he could and that the poor tactical question did not substantially prejudice Jones.

CONCLUSION—Jones received effective assistance of counsel.

To succeed upon a claim of ineffective assistance of counsel, it must be shown that deficient performance by counsel has prejudiced the defendant. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291. A defendant must overcome with strong and compelling evidence the presumption that his counsel was competent. *Clark v. State* (1990), Ind., 561 N.E.2d 759. A fair trial is denied when a conviction is the result of a breakdown in the adversarial process that renders the result unreliable, and a defendant must show that but for counsel's errors, there was a reasonable probability that the result would have been different. *Burris v. State* (1990), Ind., 558 N.E.2d 1067; *Green v. State* (1990), Ind.App., 557 N.E.2d 1032. Isolated poor strategy, inexperience or bad tactics do not necessarily amount to ineffective assistance of counsel. *Vaughn v. State* (1990), Ind., 559 N.E.2d 610.

Jones first attacks his counsel's failure to file a notice of alibi, which prevented Jones from offering alibi evidence at trial. Even though Jones' counsel had not represented Jones at the time the notice was due, Jones argues that his counsel should have attempted to file a belated notice of alibi. Jones' counsel, however, indicated that one of Jones' alibi witnesses was the primary witness against Jones in another proceeding, in which the counsel also represented Jones, and he was therefore unable to talk with her until shortly before trial. *Record* at 263–64.

The failure to present an alibi defense is not necessarily ineffective assist-

ance of counsel. *See Zeilinga v. State* (1990), Ind., 555 N.E.2d 471; *Miller v. State* (1989), Ind., 543 N.E.2d 639; *Smith v. State* (1987), Ind., 511 N.E.2d 1042. As one of Jones' prospective alibi witnesses was a witness against him in another proceeding, we cannot fault trial counsel for not pursuing that potential witness. *See Smith, supra.*

Further, as the State points out, Jones' prospective alibi witnesses matched the descriptions of the other individuals the victim testified were with Jones during the crime. Trial counsel's strategic decision not to use witnesses which could be used to strengthen the State's case does not amount to deficient performance which prejudiced Jones. *See Zeilinga, supra; Miller, supra.*

 Jones also believes his counsel was ineffective for eliciting damaging information when cross-examining the victim's mother-in-law. During that cross examination, trial counsel sought to impeach the witness by eliciting the witness's knowledge concerning the victim's fugitive status upon her return to the witness's residence. *Record* at 119–26. When asked about the circumstances surrounding the victim's return, the witness related that Jones had beaten the victim, kidnapped her, taken her out of state and that her son had retrieved her. *Record* at 118–19. Rather than making a motion to strike the answer, trial counsel continued his line of questioning. Inartful cross-examination does not amount to ineffective assistance of counsel, *Mott v. State* (1989), Ind., 547 N.E.2d 261, and we cannot conclude that trial counsel's tactical decision to lessen the impact of the potentially prejudicial testimony by not emphasizing it with a motion to strike was faulty.

Jones has failed to establish that, but for his counsel's errors, the result of his trial would have been different. *See Green, supra.* Jones was not entitled to a perfect trial, he was entitled to a fair trial, and the record adequately demonstrates his trial met that standard. *See Riley v. State* (1986), Ind., 489 N.E.2d 58; *Pineiro v.*

State (1982), Ind.App., 434 N.E.2d 135, *trans. denied.*

Judgment affirmed.

SHIELDS, J., concurs.

HOFFMAN, P.J., concurs in part and dissents in part with opinion.

HOFFMAN, Presiding Judge, dissenting and concurring.

I dissent to Issue One and concur in the remaining issues.

Jones was prosecuted under the wrong habitual offender statute.

Since the prior felonies were committed prior to September 1, 1985, IND.CODE § 35-50-2-7.1 (1988 Ed.) does not apply in this case. *Moncrief v. State* (1988), Ind. App., 525 N.E.2d 1286.

This case should be remanded for new sentencing.