**Daniel Felix MARTINEZ, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8807–CR–645.**

Supreme Court of Indiana.

Feb. 9, 1990.

Lonnie M. Randolph, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of fifty (50) years.

The facts are: On November 4, 1986, appellant picked up Mario Sanders and Phillip Serros in his car to go get something to drink. They subsequently picked up the victim, Floyd Lee Bailey, and the four men pitched in to purchase some wine. They then cruised around in the automobile drinking wine. An argument ensued between appellant and the victim. Appellant stopped in a wooded area near Lake Michigan and exited the vehicle. He obtained a tire iron from the trunk, put on a pair of gloves, and ordered the victim out of the car. He then began beating the victim on the head with the tire iron.

While this was going on, Serros spotted an approaching automobile and attempted to get appellant's attention by throwing a stone in his direction. The stone bounced off of appellant and hit the victim. Appellant threw the tire iron into the lake, returned to the car, and said, "Let's go." They left, leaving the victim on the ground.

Upon returning to East Chicago, they dropped off Sanders; they then picked up Tony Lopez, and appellant told him they wanted to show him something. Serros warned appellant, "You shouldn't tell him anything," to which appellant replied, "That's cool. He's my friend."

Appellant then drove back to the wooded area with Serros and Lopez. Appellant and Lopez exited the car and returned to where Bailey was lying. Later, appellant told Debry Coleman that he killed the victim and dumped his body in the lake. He also made a similar statement to Eledar Borom. He remarked, "I'm tired of people messing me over," and added that he wanted to do the same thing to a few other people.

On November 26, 1986, the victim's body was discovered after it washed up on the shore of Lake Michigan. Dr. Young Kim, a pathologist, performed an autopsy on the victim's body. He found two deep lacerations on the right side of the victim's forehead. He found an extensive fracture of the victim's skull. He also found a hemorrhage inside the skull. Dr. Kim determined that the cause of the victim's death was a fractured skull and bleeding inside the brain.

East Chicago Police Officer Edward Samuels investigated the case. On November 18, 1986, Officer Samuels accompanied Lopez and Serros to the scene of the beating. While there, he discovered a bloodstain on a tree that was in the vicinity where the beating took place. Serros directed him to a location on Dickey Road where he found a glove that had been discarded by appellant after the victim's beating.

Kimberly Epperson, a forensic serologist, analyzed the bloodstain that was on the tree and determined that it consisted of human blood.

Officer Samuels obtained statements from at least five individuals, including Sanders and Serros, both of whom asserted that appellant had beaten the victim with the tire iron. There is some discrepancy in Sanders' testimony as to whether Serros threw a rock which bounced off appellant and hit the victim or whether Serros hit the victim in the head with a large rock after he was on the ground. Serros denied that he did either. Sanders claimed that the victim was still breathing and still alive when he last saw him.

■ Appellant claims this case should be reversed because of statements made by the deputy prosecutor which appellant contends were improper comments alluding to the fact that he did not testify at trial. He cites several statements made by the deputy prosecutor during his final summation. However, none of these statements made any reference to the fact that appellant had not testified. All of these statements amounted to no more than the deputy prosecutor commenting upon the evidence which was presented, to the lack of any evidence to the contrary, and disagreement with the statements made by appellant's counsel in his summation to the jury.

■ We previously have held that statements made by the State as to the uncontradicted nature of the State's evidence do not violate a defendant's Fifth Amendment rights. *Flynn v. State* (1986), Ind., 497 N.E.2d 912. Comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify. *Callahan v. State* (1988), Ind., 527 N.E.2d 1133. The record in this case discloses that the prosecuting attorney's comments stayed well within these parameters. We see no reversible error here.

■ Appellant contends the State was guilty of misconduct in that it had personal knowledge of an exculpatory statement made by Antonio Lopez, which statement was not disclosed to appellant. The alleged statement indicated that Lopez would have testified that Serros struck the victim on the head with a large boulder as he lay on the ground after the attack by appellant. However, the record in this case clearly discloses that appellant was aware of such a claim. In fact, the testimony of Officer Samuels disclosed that such a claim was made. The record also reveals that the State made full disclosure that Lopez had gone to California and furnished appellant with the information as to where he could be found. There is no showing in this record that appellant took any of the steps available to him to compel the return of Lopez to testify.

■ In addition, we would observe that, even if we assume for the sake of argument that Lopez would in fact have testified that the victim was still alive when he first saw him on the ground and that Serros struck him a severe enough blow to cause his death at that time, such evidence would only be cumulative of the evidence which in fact was presented. We further would observe that assuming such to be the factual situation, it would in no way relieve appellant of his responsibility in the victim's death. Such a factual demonstration would indicate that appellant and Serros acted in concert in attacking the victim and that each rendered severe blows to the victim's head. Where two persons enter into the commission of a crime, each is responsible for the result thereof. *Menefee v. State* (1987), Ind., 514 N.E.2d 1057; Ind.Code § 35-41-2-4.

■ Appellant claims reversible error occurred when the State, in its final argument, alluded to a plea agreement which was not entered in evidence during the trial. During the trial, appellant attempted to discredit the testimony of Debry Coleman by showing that he had been committed to enter into a plea agreement to an unrelated burglary charge. The defendant thus attempted to leave the impression

with the jury that Coleman had received favorable treatment in exchange for his testimony in the case at bar.

In rebuttal, the State produced a plea agreement of Coleman's codefendant, Gregory Daniel, to demonstrate that it was identical with Coleman's agreement and thus demonstrate that no special favoritism was shown to Coleman. Daniel's plea agreement was actually entered in evidence but for some reason was not read to the jury. However, the State in its summation did allude to it. Under the circumstances, because appellant had opened the door by raising the question as to Coleman's plea, it was entirely proper for the State to introduce the otherwise unrelated plea agreement of Daniel to present evidence to the jury that Coleman had received no preferential treatment as implied by appellant. *See Goodman v. State* (1985), Ind., 479 N.E.2d 513.

■ Appellant claims it was prejudicial error for the trial court to allow the admission in evidence of photographs of the victim. He claims their admission was unnecessary because he had stipulated to the cause of death. The fact that appellant was willing to enter into such a stipulation does not foreclose the State from foregoing the stipulation and presenting evidence. *Stamps v. State* (1987), Ind., 515 N.E.2d 507.

■ There is no question that four of the five photographs entered in evidence show graphic and gruesome pictures of the partially decomposed corpse of the victim. However, the fact that the photographs are revolting is no reason for their mandatory exclusion from evidence. *Watkins v. State* (1988), Ind., 528 N.E.2d 456. Each of the pictures to which appellant now objects represents a graphic demonstration of the testimony of the doctor who performed the autopsy. The photographs illustrate the severity of at least two deep and narrow wounds to the victim's skull and also demonstrate what appears to be a massive blow to the side of the victim's head. The photographs also show bits of gravel imbedded in the skin of the victim's face. Each picture depicts the injuries suffered by the victim as described by the physician. The trial court did not err in permitting them in evidence. *Whitehead v. State* (1987) Ind., 511 N.E.2d 284, *cert. denied,* 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773.

■ Appellant contends the trial court erred in permitting the introduction of a portion of a tree trunk stained with blood. Evidence showed that the portion of wood introduced in evidence was excised from a tree at the scene of the attack. The serologist testified that the stains were human blood; they could not, however, be identified as the blood of a particular person. Appellant thus claims the exhibit was not sufficiently tied to the case to permit its introduction into evidence. The evidence in this case showed a bloody assault was perpetrated upon the victim at the place where the bloodstained tree was found. We previously have held that even if the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Hubbard v. State* (1987), Ind., 514 N.E.2d 1263. The presence of the bloodstain tended to verify the testimony of witnesses as to the severity of the attack and the location where it occurred. The trial court did not err in permitting the introduction of the exhibit.

In a separate portion of his brief, appellant elaborates on the State's failure to disclose the statement of Lopez which he claims to be exculpatory. As previously stated in this opinion, we see nothing in Lopez's alleged statement which in fact would be exculpatory. It is true that Sanders and Serros blamed the attack entirely upon appellant and took none of the responsibility upon themselves. However, for the sake of argument, we can accept the fact that Lopez would state that Serros in fact struck the still-living victim in the head with a large stone following the attack by appellant.

The fact that both parties were engaged in an attack upon the decedent makes them both severally responsible, as previously stated; thus even appellant's version of Lopez's statement is not, in fact, exculpato-

ry. Even if assuming for the sake of argument that the State did not furnish such a statement to appellant, this record clearly demonstrates appellant did know of the statement and demonstrates as well that it would have been to no avail.

Appellant claims the State had an affirmative duty to produce Lopez at the trial. However, under the circumstances set forth above, even assuming, without deciding, that the State should have produced Lopez, there is no showing in this record that his production would have been beneficial in any manner to appellant. We would further point out that it is not the duty of the prosecutor to assemble evidence for the defense. *Douglas v. State* (1984), Ind., 464 N.E.2d 318. If appellant wished to have Lopez present at the trial, it was his burden to seek a court order to compel the witness' presence. *Gorman v. State* (1984), Ind., 463 N.E.2d 254.

■ Appellant contends the non-entry of judgment by the trial court upon the jury's verdict of guilty left his case in a status of no final disposition; thus, the court had no authority to sentence him. This Court has held that judgment and sentence are synonymous within the context of criminal law. *Schalkle v. State* (1979), 272 Ind. 134, 396 N.E.2d 384. We have held recently that failure to enter judgment prior to sentencing does not constitute error provided the defendant is otherwise properly sentenced. *Thompson v. State* (1986), Ind., 492 N.E.2d 264. In the case at bar, appellant was properly sentenced by the trial court on December 30, 1987. We find no error in the manner in which sentencing was accomplished.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.