**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 28 2012, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM BRUCE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1112-CR-671 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1005-FA-16

**August 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

William Bruce appeals his two convictions for child molesting, each as a Class A felony, following a jury trial. Bruce raises three issues for our review, which we restate as the following two issues:

1. Whether the prosecutor committed fundamental error when she made certain comments during her closing remarks; and

2. Whether the trial court committed fundamental error when it permitted the State to introduce evidence that Bruce had had his parental rights over his own children terminated.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the fall of 1999 and the spring of 2000, D.J., who was four or five at the time, was at Bruce's house playing hide-and-seek with Bruce's child, B.B. D.J. went upstairs looking for B.B., but found Bruce on a bed without pants. Bruce told D.J. to come over to him and perform oral sex on him. Afterwards, Bruce told D.J. that he would be in trouble if he said anything about it to anyone.

On a later date, D.J. was again playing with B.B. at Bruce's house when Bruce accompanied D.J. into a bathroom. Bruce's wife at the time, Rhonda, observed this but did not think anything of it. Inside the bathroom, Bruce had D.J. perform oral sex on him. D.J. later told his mother that he did not want to go to Bruce's house anymore.

Almost a decade later, in 2009 D.J. was at his mother's licensed daycare when his mother observed him inappropriately touching two young girls. D.J.'s mother immediately called the police. She also called a family friend, who came over and spoke

2

with D.J. During this conversation, D.J. informed her of the incidents with Bruce, and D.J.'s mother relayed that information to police.

On May 19, 2010, the State charged Bruce with four counts of child molesting, which it later amended to two counts. At the ensuing jury trial, the State called as witnesses D.J.'s mother and her friend, who each testified, without objection, that D.J. had told them that Bruce had molested him. The State also called D.J., who described the molestation to the jury. The State then called Gypsy Raber and Nancy Quigly, teachers at the Head Start program in 1999-2000 when both D.J. and B.B. were students. Raber testified that they "had a lot of concerns" about B.B. Transcript at 129. And Quigly testified that Bruce was the only parent who objected to the teachers teaching the students "good touch, bad touch." Id. at 144-46.

The State then called Bruce's former wife, Rhonda, to testify. She corroborated D.J.'s account of having once been accompanied into the bathroom by Bruce. Without objection, Rhonda testified that she and Bruce had their parental rights terminated in late 2004 or early 2005 and that their children have been adopted. However, when the jurors informed the trial court that they wanted to ask Rhonda why her and Bruce's parental rights had been terminated, the trial court refused to ask the question. The State's last witness was Sergeant Anthony McCoy of the Lafayette Police Department, who testified as to the State's investigation of Bruce.

After the State closed its case, the defense rested without presenting any evidence. During her closing remarks, the prosecutor stated as follows:

> You've heard nothing to refute [D.J.'s] testimony. No reason why he would tell you anything if it wasn't true. So I go through and I try to think

of what's all the—all the even conceivable possibilities of what would bring us here other than what [D.J.] was telling was true. Who has a motive to lie here? Who has a motive not to lie here? Who has the cause to benefit? Well look at the costs to [D.J.] He's carried this with him . . . [f]or at least eleven or more years. I asked him did you ever forget it? Is this like something that you just now remembered? Nope, he's lived with this for eleven years or more years. He never forgot what happened to him. Has anybody else done this to you? Like did you get it mixed up with somebody else? Either somebody do this before or since? Nope, that was the only man. I'm thinking, well, maybe you made this up to try to make yourself look better when you got caught doing something maybe you did it for that reason. Well, you heard about what that day was like. . . . Autumn [the mother's friend] used the word chaos that day. [D.J.'s mother] was quite distraught too. So he's a fourteen year old boy kind of caught in the act and he makes this up all of a sudden to try to make himself look better? Nope, that doesn't fly. If you're going to make up something to get somebody else in trouble you do it to your benefit. Well, what happened to him got him in two years of treatment and counseling . . . . If you're gonna make up something you make up a good one. You . . . remember names, you remember dates, you remember locations, you remember all those details that somebody would like to hear. [D.J.] doesn't remember those big details . . . . He was about five years old. Think back to what you can remember at five years old . . . .

Did you hear any challenges to [D.J.'s] credibility? Did you hear any inconsistencies among these years of anything that's changed in his account of what the defendant did to him? Not one. Not one at all. So he's been very, very consistent throughout that. . . .

So here's what has been proven beyond a reasonable doubt[:] that it was this defendant. No other name has been presented to you, no other identity, no other person. Nothing. This defendant. This man right here . . . . And . . . through the investigation, through the memories they were able to narrow it down to that school year of '99/2000. I thought that was pretty good. And I have every confidence in the twelve of you, thirteen if necessary that you will see the defendant for what he is. He's a child molester. He knows it. Sergeant McCoy knows it. I know it and now with this evidence you know it. . . .

Id. at 191-92, 195, 197-98. And in her rebuttal, the prosecutor added:

Remember that friend of mine from Atlanta who had that trial a couple of weeks ago and he said he wanted to make sure that was his verdict? He's gonna know you have doubts but he needed to make sure that when he

4

made that decision he was going to be able to sleep that night and sleep soundly. Detective McCoy did his job. He investigated and corroborated everything that was available. I presented a case where the evidence showed you beyond a reasonable doubt that man's a child molester. It's time to do your job and find this defendant guilty and you'll sleep just fine tonight.

Id. at 202. At no point during any of those comments did Bruce object.

The jury found Bruce guilty on both of the Class A felony allegations, and the trial court sentenced him to an aggregate term of fifty years, fully executed. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

On appeal, Bruce argues that fundamental error occurred during his trial. As our supreme court has explained:

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. See, e.g., Trice v. State, 766 N.E.2d 1180, 1182 (Ind. 2002); Hayworth v. State, 904 N.E.2d 684, 694 (Ind. Ct. App. 2009). The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." Clark v. State, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." Brown v. State, 799 N.E.2d 1064, 1068 (Ind. 2003).

This doctrine has been applied, for example, to review a conviction without proof of an element of the crime despite the lack of objection. Smith v. State, 459 N.E.2d 355, 357 (Ind. 1984). . . .

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010).  With that stringent standard in mind, we turn to Brown's two arguments on appeal.

**Issue One:  Closing Remarks**

Bruce first contends that the prosecutor's closing remarks constituted fundamental error because the prosecutor inappropriately "comment[ed] upon the failure of [Bruce] to testify."  Appellant's Br. at 9-10.  We cannot agree.  As our supreme court has explained:

> The Fifth Amendment privilege against self-incrimination is violated "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence."  Moore v. State, 669 N.E.2d 733, 739 (Ind. 1996). However, statements by the prosecutor concerning the uncontradicted nature of the State's evidence do not violate the defendant's Fifth Amendment rights.  Martinez v. State, 549 N.E.2d 1026, 1028 (Ind. 1990). Rather, comment on the lack of defense evidence is proper so long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify.  Id.; see also Timberlake v. State, 690 N.E.2d 243, 254 (Ind. 1997) (observing "[d]uring argument, the prosecutor may argue and comment upon the evidence presented at trial. . . .  A comment based upon uncontradicted evidence is not equivalent to an impermissible comment upon a defendant's decision not to testify").

Dumas v. State, 803 N.E.2d 1113, 1118 (Ind. 2004).  Here, the prosecutor's closing remarks focused only on the absence of any evidence to contradict the State's evidence. The prosecutor did not address Bruce's failure to testify, explicitly or implicitly, and nothing in her closing remarks is subject to a reasonable interpretation that the jury was being asked to draw an adverse inference from Bruce's silence.  As such, this argument is without merit.

Bruce also argues that the prosecutor used her closing remarks to impermissibly vouch for the witnesses.  While a prosecutor may not personally vouch for a witness, "a

6

prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." Cooper v. State, 854 N.E.2d 831, 836 (Ind. 2006). Having reviewed the totality of the prosecutor's closing remarks, we conclude that the prosecutor did not impermissibly vouch for a witness. Rather, the prosecutor merely commented on the credibility of the witnesses based on reasons arising from the evidence. And even if some of the prosecutor's comments were objectionable, they do not come close to the "clearly blatant" error required for Bruce to show reversible, fundamental error. See Brown, 929 N.E.2d at 207. Accordingly, we hold that there is no fundamental error in the prosecutor's closing remarks.

### Issue Two: Admission of Evidence

Bruce also contends that the trial court committed fundamental error when it permitted the State to introduce into evidence the fact that he had had his parental rights terminated. But, again, Bruce cannot show that this alleged error, even if there were any, is fundamental error. The improper admission of evidence

> ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning [the defendant's] conviction lies not in doubt as to whether [he] committed these crimes, but rather in a challenge to the integrity of the judicial process. . . . Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

Id. For the same reasons stated by our supreme court in Brown, Bruce's challenge to the allegedly inadmissible evidence here does not demonstrate fundamental error. Hence, we affirm his convictions.[1]

---

[1] Because we hold that Bruce has not demonstrated error, we need not address his contention that "the cumulative effect" of the alleged errors was "not harmless." Appellant's Br. at 17.

Affirmed.

KIRSCH, J., and MAY, J., concur.