**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 14 2012, 8:40 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPEN T. OWENS**
Public Defender of Indiana

**VICKIE YASER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM C. DAVIS,                          )
                                           )
    Appellant-Petitioner,              )
                                           )
        vs.                         )    No. 65A04-1206-PC-307
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Respondent.               )

APPEAL FROM THE POSEY SUPERIOR COURT
The Honorable James M. Redwine, Special Judge
Cause No. 65D01-0808-PC-382

**December 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

William Davis was convicted of one count of Class A felony child molesting and two counts of Class C felony child molesting and was sentenced to fifty-two years of incarceration. This court upheld his convictions and sentence on direct appeal, and Davis sought post-conviction relief ("PCR"). The post-conviction court denied Davis's PCR petition, and, while we affirmed much of the decision, we remanded for further proceedings related to several of Davis's claims. The post-conviction court again denied Davis relief, and Davis appeals from that denial. Davis contends that he received ineffective assistance of trial and appellate counsel and that the post-conviction court was biased against him. We affirm.

**FACTS AND PROCEDURAL HISTORY**

The underlying facts of this case were related in this court's disposition of Davis's direct appeal:

> Davis met J.C. and J.H. through their mother, Machelle Yott, and he met R.H. through R.H.'s uncle and mother. J.C. and R.H. were born respectively February 17, 1992 and December 19, 1990.
> Davis introduced R.H. to J.C. and J.H. The boys spent time with Davis and stayed overnight at his home. On various occasions, Davis penetrated J.C.'s anus with his penis and fingers, placed his mouth and hands on J.C.'s penis, and forced J.C. to place his mouth and hands on Davis's penis. Similarly, Davis placed his penis against R.H.'s buttocks, placed his mouth and hands on R.H.'s penis, and forced R.H. to place his mouth and hands on Davis's penis. J.C. witnessed Davis's acts against R.H, while R.H. witnessed at least some of Davis's acts against J.C. Further, Davis forced each victim to place his mouth on the other victim's penis.
> In July, 2004, Yott called 9-1-1 regarding a conversation she had had with J.C. about some of these events. Evansville Police Department Officer Jim Harpenau interviewed all three boys and spoke briefly with Davis by telephone. On September 16, 2004, the State charged Davis in Posey County with Failure to Register as a Sex Offender, a Class D felony, and five counts of Child Molesting–two counts, Class A and C felonies, for acts against J.C., two counts, Class A and C felonies, for acts against J.H., and one count as a Class

2

C felony for acts against R.H. The next day, the trial court issued a warrant for Davis's arrest.

Over six to eight months, Posey County Officer Dan Gaffney attempted to locate Davis, ultimately contacting the Federal Bureau of Investigation ("FBI") for assistance. FBI Agent Matthew Mohr ("Agent Mohr") compared a photograph in the arrest warrant with the photograph of a North Dakota driver's license for Mark Allen Davis. After comparing the photographs, Agent Mohr and two other FBI agents went to the Fargo residence listed for Mark Allen Davis. Davis opened the door to find the agents with their weapons drawn. Agent Mohr identified himself as "FBI." Transcript at 183. Upon recognizing Davis as the person they were seeking, Agent Mohr entered the residence. As the agents were detaining Davis, Agent Mohr said in an inquiring tone, "William." Tr. at 184. Davis responded, "I'm Mark. William is my brother. This happens all the time." *Id.* Despite Davis's statement, Agent Mohr remained convinced that the person detained was William Davis. Davis agreed to go to the local sheriff's office to be fingerprinted for identification purposes. Because Davis had a broken leg, the agents were assessing how to transport him. During that time, the agents told Davis that "it would be easier on all of us if he would tell us the truth." Tr. at 185. Shortly thereafter, Davis said, "I'm Bill. My life is over." *Id.*

On November 4, 2005, Davis moved to sever the six counts into four different trials, as follows: both counts related to J.C., both counts related to J.H., the sole count for acts against R.H., and the count for failing to register as a sex offender. Subsequently, Davis filed his Amended Motion for Severance, seeking consideration of the six counts in three trials–a separate trial for the sex-offender-registry count and a separate trial for the count alleging acts against R.H. The State stipulated to severance of the count for Failure to Register as a Sex Offender. As to severance of the count for acts against R.H., the trial court denied Davis's motion, concluding that the five counts constituted a common modus operandi. Meanwhile, Davis moved unsuccessfully to suppress evidence of the statements he made to Agent Mohr in Fargo. Davis renewed both objections during the trial.

The jury acquitted Davis on the counts alleging acts against J.H., but found him guilty of Child Molesting as Class A and C felonies for acts against J.C. and Child Molesting as a Class C felony for acts against R.H. The trial court entered judgment of conviction on the three verdicts and sentenced Davis to forty-five years imprisonment for the Class A felony conviction, seven years imprisonment on the Class C felony conviction for acts against J.C., with those sentences running concurrently, and seven years imprisonment on the Class C felony conviction for acts against R.H., to run consecutively to the prior sentences. Thus, Davis's aggregate sentence is fifty-two years imprisonment.

*Davis v. State*, No. 65A01-0605-CR-212, slip op. at 1-2 (Ind. Ct. App. May 2, 2007) (footnotes omitted), *trans. denied* ("*Davis I*").

On August 28, 2008, Davis filed a pro se PCR petition, which the post-conviction court denied on April 8, 2010. In his PCR petition, Davis had claimed, *inter alia*, that the post-conviction court was biased against him and that he had received ineffective assistance of trial and appellate counsels. On November 10, 2011, this court denied Davis's claim that the post-conviction court was biased and several of his contentions regarding his trial counsel's allegedly ineffective assistance. *Davis v. State*, 65A01-1004-PC-208 (Ind. Ct. App. Nov. 10, 2011), *trans. denied* ("*Davis II*"). In *Davis II*, however, we noted that the post-conviction court had failed to enter findings on several of Davis's specific claims of ineffective assistance of trial and appellate counsels and remanded for the entry of findings:

> The post-conviction court did not enter specific findings as to the following allegations of ineffective assistance of trial counsel raised by Davis: (1) trial counsel's introduction and the admission of Defense Exhibits 1 and 2, which were J.C.'s depictions of the length and circumference of Davis's penis; (2) trial counsel's failure to interview the examining physician or consult a medical expert; (3) trial counsel's failure to adequately investigate Cathy Scott as a witness; (4) trial counsel's failure to object to the prosecutor's argument regarding an internal exam; (5) trial counsel's failure to protect Davis from an untrue inference of guilt based upon medical reports; (6) trial counsel's failure to object to, as alleged by Davis, "a statement that could be construed as a comment upon Davis' right not to testify," Appellant's Brief at 36; and (7) trial counsel's failure to object to the prosecutor calling Davis a sex predator. The court also did not address Davis's claim that his appellate counsel was ineffective for: (1) failing to raise issues of prosecutorial misconduct as fundamental error; and (2) failing to ensure that the *voir dire* was transcribed.

*Id.* slip op. at 7 (footnote omitted). On May 17, 2012, the PCR court issued specific findings related to the nine claims identified in *Davis II*.

4

**DISCUSSION**

*PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court…. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

This appeal concerns the seven claims of ineffective assistance of trial counsel and two claims of ineffective assistance of appellate counsel addressed by the PCR court on remand following *Davis II*. Each will be addressed in turn, with additional facts related as necessary.

**I. Whether Davis Received Effective Assistance of Trial Counsel**

We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

5

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

### A. Inclusion of Defendant's Exhibits 1 and 2

Defendant's Exhibits 1 and 2 are sketches, prepared by J.C. at a deposition with assistance from William Gooden, Davis's trial counsel. The sketches, which represented J.C.'s estimates of the length and circumference of Davis's erect penis, were introduced by Gooden at trial. Davis essentially contends that his trial counsel was ineffective for introducing exhibits that tended to show that J.C. had seen his erect penis before. While introducing such evidence might constitute ineffective assistance in another context, it does not in this case.

J.C. testified at trial that he suffered rectal bleeding as a result of Davis's anal penetration of him. Gooden also questioned J.C. and reminded him that he had told Detective Harpenau on July 28, 2004, that Davis had sodomized him within the past two or three days. Yet, on July 28, 2004, J.C. received a medical examination which revealed "[n]o tears, no obv[ious] stretching, [or] lesions" to his anus. Trial Ex. 2 p. 6. As highlighted in his opening statement, Gooden emphasized the results of the medical examination, noting that nothing in the results supported J.C.'s allegations. Gooden testified at the PCR hearing that he introduced Exhibits 1 and 2 to show the size of Davis's penis with hopes of appealing to the jury's "common sense" by arguing that J.C. could not have been anally penetrated with

6

a penis of adult size and show no evidence of it two to three days later. PCR Tr. p. 11. Had Gooden's appeal to the jury's "common sense" been successful, J.C.'s credibility would have been undermined, perhaps resulting in Davis's acquittal of charges related to J.C. Gooden's strategy, although ultimately unsuccessful, strikes us as entirely reasonable under the circumstances. Davis did not receive ineffective assistance of trial counsel in this regard.

### B. Failure to Call Medical Witness

Davis also contends that Gooden was ineffective for failing to investigate the lack of anal tearing and other injuries found in J.C.'s July 28, 2004, examination. Essentially, Davis's argument is that further investigation by Gooden would likely have revealed an expert who would have testified that J.C.'s medical examination was inconsistent with his account of molestation. Gooden, however, testified that he had handled numerous molestation cases over the years and that he did not want a doctor to testify regarding the results of the medical examination because, in his experience, no doctor would have testified that the results were inconsistent with J.C.'s accusations. After such testimony, Gooden noted that any value that the examination had to Davis's case would then "have been gone." PCR Tr. p. 11. Again, Gooden's approach strikes us as reasonable, as a doctor testifying that J.C.'s lack of injury was not inconsistent with his accusations would have undercut Gooden's argument. Davis's claim is premised on the idea that a doctor could have been found who would testify that J.C.'s lack of injuries rendered his account impossible or implausible, a premise for which Davis offers no evidentiary support. Davis did not receive ineffective assistance in this regard.

7

## C. Failure to Investigate Cathy Scott

Davis claims that he believes that Yott orchestrated the charges against him and influenced J.C. and J.H. to cooperate. Davis informed Gooden about Cathy Scott, a potential witness who Davis claims would have corroborated this theory by testifying that Yott had coached her children, had previously made false accusations regarding molestation of her children, and was dissatisfied with her relationship with Davis. Scott had been interviewed by an investigator with the Vanderburgh County Public Defender's Office on November 16, 2005, approximately three months before Davis's trial. Although Gooden interviewed Scott "substantially" before Davis's trial, he could not recall precisely when. PCR Tr. p. 296.

As for the first of Davis's points, Gooden testified that he interviewed Scott and that she "emphatically denied" that Yott told her that she had told her children what to tell the police. PCR Tr. p. 19. Moreover, as Gooden noted, evidence of any prior accusation of sexual molestation of her children would have been inadmissible if it had been made by Yott, as she was not the complaining victim in this case. *See, e.g.*, *Steward v. State*, 636 N.E.2d 143, 148 (Ind. Ct. App. 1994), aff'd, 652 N.E.2d 490 (Ind. 1995) ("[E]vidence of prior false accusations [of sexual abuse] made *by the victim* are admissible if they are either 'demonstrably false' or admitted *by the victim* to be false.") (emphases added). Finally, the only evidence in the record that Scott felt that Yott might have been angry with Davis comes from her Vanderburgh County interview, and there is no indication that Gooden was even aware that this interview had taken place (if, indeed, it had) when he spoke with Scott on the telephone. Davis has failed to show that calling Scott to testify would have helped his case,

8

and, as such, has not established that Gooden was ineffective for not doing so.

### D. Evidence of J.H.'s and J.C.'s Prior Sexual knowledge

During his visit to the emergency room on July 28, 2004, J.H. told a physician that J.C. had anally penetrated J.H. on many previous occasions. The medical report of J.H.'s visit was admitted into evidence by stipulation of the parties, including the notation where the doctor noted that J.H. "said [J.C.] had put his penis in [patient's] bottom many times." State's Trial Ex. p. 5. J.C. admitted in a December 2005 deposition that he had been sexually active with J.H. before meeting Davis. After Gooden attempted to persuade the trial court that he should have been able to cross-examine J.H. and J.C. regarding their sexual activity, the trial court ruled only that Davis could ask J.C. and J.H. if they "knew, prior to meeting [Davis], that men sometimes engage[d] in anal intercourse with other men or boys[.]" Direct Appeal App. p. 325. The State and Davis subsequently entered into a stipulation "that [J.C.] and [J.H.] both were aware prior to ever meeting William C. Davis that men sometimes had anal sex with other men and with boys." Trial Tr. p. 188.

Davis argues that Gooden was ineffective for failing to take one of several other approaches to the situation, including refusing the stipulation, seeking to confine any reference to anal intercourse to allegations of such between Davis and J.C., and proposing an alternate stipulation that J.C. and J.H. engaged in sexual intercourse, but that it occurred prior to meeting Davis. We cannot conclude that Gooden was ineffective, in light of the circumstances of the case.

Both sides stipulated to the admission of the unredacted copy of J.H.'s medical report,

which contained J.H.'s report that he and J.C. had repeatedly had anal sex. It was clearly in Davis's interest to allow this evidence in, to the extent that it might allow an inference that J.C. and J.H. had an independent source for their knowledge of sexual conduct. The value to Davis of this evidence would be significantly diminished, however, if the jury inferred that the sexual conduct between J.C. and J.H. only occurred after they met Davis, as that would tend to show that he was, in fact, the source of their sexual knowledge and perhaps even the cause of the intercourse. In order to decrease the chances that the jury might make such an inference, Gooden agreed to a stipulation that J.C. and J.H. had knowledge of anal intercourse prior to meeting Davis.

Gooden's approach to this situation strikes us as reasonable, even if it is not the only reasonable approach that he could have taken. Gooden took a calculated risk, stipulating to evidence that J.C. and J.H. had engaged in anal intercourse while also stipulating that their source of knowledge of anal intercourse was not Davis. While this second stipulation was not as helpful to Davis as a stipulation that J.C. and J.H. had engaged in anal intercourse before meeting Davis, there is no reason to believe that the State would have agreed to such a stipulation had Gooden proposed it. Moreover, Davis was far better off than if Gooden had simply refused the stipulation, as that would have left the record devoid of any evidence that the source of J.C.'s and J.H.'s sexual knowledge was anything or anyone other than Davis. Davis did not receive ineffective assistance of trial counsel in this regard.

### E. Failure to Object to Prosecutor's Argument

During the State's final argument, the prosecutor, in reference to J.C.'s medical

examination, made the following statement: "Uh, this was an external exam. There was no internal exam done. And if you'll look at the records, clearly if there had been an internal exam done, it would have been in the records." Trial Tr. p. 225. Davis argues that Gooden was ineffective for failing to object to the argument, claiming that the statement lacked a basis in the evidence. Specifically, Davis contends that there is no basis in the record for suggesting that an internal examination of J.C. was not done. The statement, however, is an accurate assessment of the evidence and, as such, was not improper. The record of J.C.'s July 28, 2004, medical examination, admitted as State's Exhibit 2, clearly indicates that no internal examination was done, and there is no evidence that an internal examination was done on any other occasion. Gooden was not ineffective for failing to object to the prosecutor's comments.

**F. Failure to Object to Alleged Statement on Davis's Decision not to Testify**

Davis contends that Gooden was ineffective for failing to object when the State argued that its evidence was uncontradicted. Specifically, when referring to J.C.'s, J.H.'s, and R.H.'s testimony, the prosecutor noted that "[y]ou didn't hear any conflicting testimony[.]" Trial Tr. p. 221. "The Fifth Amendment privilege against self-incrimination is violated 'when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004) (quoting *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996)). "However, statements by the prosecutor concerning the uncontradicted nature of the State's evidence do not violate the defendant's Fifth Amendment rights." *Id*. (citing

11

*Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind. 1990)). "Rather, comment on the lack of defense evidence is proper so long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Id.* Here, the prosecutor's comment focused solely on the uncontradicted nature of the State's evidence and did not allude to Davis's decision to remain silent. As such, it was permissible argument, and Gooden was not ineffective for failing to object to it.

### G. Failure to Object to Statements Allegedly Vilifying Davis

Davis contends that Gooden was ineffective for failing to object when the prosecutor, during final argument, told the jury, "Bill Davis is a sexual predator." Trial Tr. p. 248. "It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence." *Ellison v. State*, 717 N.E.2d 211, 213 (Ind. Ct. App. 1999) (citing *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind. Ct. App. 1999)), *trans. denied.* "However, Rule 3.4(e) of the Rules of Professional Conduct prohibits a lawyer from stating a personal opinion about the guilt or innocence of an accused." *Id.* Our review of the prosecutor's argument reveals no impropriety in this regard. As Davis seems to concede, the prosecutor's argument that Davis is a sexual predator was supported exclusively by references to evidence and contained no statement relating a personal opinion of guilt. Gooden was not ineffective for failing to object to the prosecutor's statement on the evidence.

### II. Whether Davis Received Ineffective Assistance of Appellate Counsel

We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben-Yisrayl v.*

> *State*, 729 N.E.2d 102, 106 (Ind. 2000). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 19-95 (Ind. 1997).

*Fisher v. State*, 810 N.E.2d 674, 676-77 (Ind. 2004). Davis's claims fall into the second category.

## A. Failure to Raise Claims of Fundamental Error

Davis contends that his appellate counsel Beth Folz was ineffective for failing to argue that the following instances of alleged prosecutorial misconduct amounted to fundamental error: (1) the prosecutor's comment on the uncontradicted nature or the State's evidence, (2) the reference to no internal examination of J.C. having been performed, and (3) the prosecutor's argument that Davis is a sexual predator. Fundamental error is "error so egregious that reversal of a criminal conviction is required even if no objection to the error is registered at trial." *Hopkins v. State*, 782 N.E.2d 988, 991 (Ind. 2003). The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Krumm v. State*, 793 N.E.2d 1170, 1181-82 (Ind. Ct. App. 2003). In all three instances cited by Davis as constituting fundamental error, we have already concluded that the State engaged in no impropriety. In other words, Davis has failed to establish error, much less fundamental error. Folz was not ineffective for failing to raise meritless claims of fundamental error.

## B. Folz's Alleged Failure to Ensure that a Transcript of *Voir Dire* was Prepared

Before trial, Davis moved for a change of venue, and a jury was selected from Monroe

County. Although *voir dire* was recorded, it was not transcribed, despite the May 19, 2006, notice of appeal requesting that it be. No issue related to jury selection was raised by Folz on direct appeal. Davis now contends that Foltz was ineffective for failing to ensure that a transcript was prepared because it deprived her of the ability to determine if any viable claims existed related to pre-trial publicity or possible juror bias.

Davis, however, cannot establish that he was prejudiced by Folz's failure to ensure that *voir dire* was transcribed. In an affidavit found to be credible by the post-conviction court, Gooden averred that he specifically conducted individual *voir dire* on the issue of pre-trial publicity. Gooden's affidavit did not report any issues related to pre-trial publicity. Also, Gooden averred that

> [d]uring individual voir dire, [Gooden] asked each juror if they or any member of their family had been the victim of a sex crime. Those who responded positively were questioned further about the facts and whether that previous experience would prejudice them in their jury service. Those who expressed concerns were excused for cause.

Direct Appeal Appellant's App. p. 338. Davis points to his affidavit, in which he maintains that Gooden did not conduct an adequate *voir dire*, but this is nothing more than a request to reweigh the evidence, which we will not do. Davis has failed to establish ineffective assistance of appellate counsel.

### III. Whether the Post-Conviction Court was Impermissibly Biased Against Davis

Finally, Davis contends that the post-conviction court was impermissibly biased against him. Davis argues that this bias is shown by the post-conviction court's judicial notice of the chronological case summary ("CCS") and transcript from Posey Circuit Cause

14

65C01-9108-CF-21 ("Cause No. 21"), Davis's previous prosecution for Class B felony and

Class C felony child molesting. Davis also contends that the post-conviction court

erroneously held him accountable for the court's failure to maintain the audio recording of

*voir dire*.

> The law presumes that a judge is unbiased and unprejudiced. *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). To rebut that presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. *Id*. Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding. *Id*. An adverse ruling alone is insufficient to show bias or prejudice. *Flowers v. State*, 738 N.E.2d 1051, 1060 n.4 (Ind. 2000), *reh'g denied*. Rather, the record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been disqualified. *Id*. at 1061.

*Massey v. State*, 803 N.E.2d 1133, 1138-39 (Ind. Ct. App. 2004).

### A. Judicial Notice of Previous Case

Davis seems to argue that the post-conviction court's judicial notice of the materials

from Cause No. 21 calls its impartiality into question. Davis, however, while proceeding *pro*

*se* below, specifically asked the post-conviction court to examine the transcript of Cause No.

21 and agreed to the court's suggestion that it examine the CCS as well. As such, any error

that the post-conviction court may have committed was invited by Davis. "A party may not

invite error, then later argue that the error supports reversal, because error invited by the

complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.

1995). "Invited errors are not subject to appellate review." *Id*.

### B. *Voir Dire*

Davis contends that the post-conviction court held him accountable for the failure to

be able to transcribe the *voir dire* proceedings. In its order, the post-conviction court found that a previous order to transcribe the *voir dire* "could not be complied with due to the circumstances" and noted that Davis did not seek to have *voir dire* prepared pursuant to Appellate Rule 31.[1] According to Davis, this is further evidence of the post-conviction court's bias against him. At most, however, this is merely an adverse ruling, which is insufficient to show bias or prejudice. *See Massey*, 803 N.E.2d at 1139. There is no indication whatsoever in the record that the post-conviction court was motivated in this matter by bias or prejudice against Davis. Davis has failed to establish judicial bias.

The judgment of the post-conviction court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.

---

[1] Appellate Rule 31 provides, in part, that "[i]f no Transcript of all or part of the evidence is available, a party or the party's attorney may prepare a verified statement of the evidence from the best available sources, which may include the party's or the attorney's recollection."