**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 18 2013, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CLARK W. HOLESINGER**
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MATTHEW A. PARKS,                )
                                 )
    Appellant-Defendant,        )
                                 )
        vs.                      )    No. 64A03-1202-CR-66
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.         )

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-1005-FC-5442

**January 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

Matthew Parks appeals his conviction for Class C felony child molesting. Ind. Code § 35-42-4-3(b) (2007). We affirm.

## ISSUES

Parks raises several issues, which we restate as two:

I. Whether the State committed prosecutorial misconduct amounting to fundamental error.

II. Whether the evidence is sufficient to sustain Parks's conviction.

## FACTS AND PROCEDURAL HISTORY

In the summer of 2009, after living with her father for several years, thirteen-year-old L.M. began living with her mother Tiffany Parks,[1] Tiffany's boyfriend Parks, and Tiffany's two daughters from a prior relationship. The family first lived with Parks's parents in Wheatfield, Indiana, but moved to Chesterton, Indiana, later that summer.

Parks began making sexual advances toward L.M. in Wheatfield. One night, L.M. and her half-sisters watched movies with Tiffany and Parks in the living room. After L.M.'s sisters and Tiffany went to bed, Parks began touching L.M. under her pajamas. He first touched her outside and then inside her bra and underwear. He then spread her legs apart, and L.M. tried to turn away to get him to stop. Parks got up and left the room. L.M. was scared but did not tell Tiffany because she did not think she would believe her.

---

[1] At the time, Tiffany had a different last name. However, she married Parks and took his name in October 2009 and remained married to him at the time of trial. Our identification of her as Tiffany Parks is consistent with the majority of the record.

2

While still in Wheatfield, Parks approached L.M. again, this time when nobody else was home. L.M. was lying on a bed watching a movie when Parks came in and lay behind her. He hugged her tightly, put his hands down her shirt and pants, and touched her underneath her bra and underwear.

Parks continued to violate L.M. after the family moved to Chesterton. Much like the first incident, the family was watching television in the living room, and after L.M.'s sisters and Tiffany went to bed, Parks touched L.M. underneath her bra and underwear. In a later incident, L.M. was home alone with Parks one morning because Tiffany was at work and L.M.'s sisters were at their father's house. L.M. awoke to find Parks behind her touching her underneath her bra and underwear.

Parks's abuse of L.M. escalated. One night, L.M. slept with Tiffany in Tiffany and Parks's bed. The next morning, after Tiffany left for work, L.M. found Parks lying behind her without his pants on. L.M. felt his penis rubbing against her bottom through her clothes. He then got up and went to the bathroom.

Up to this point, L.M. had confided in two friends about Parks's inappropriate advances but told them not to tell anyone because she was scared of what might happen.

Finally, one night L.M. was watching television in the living room. Parks was also in the living room. Parks put his hand down L.M.'s pants and touched her. He then grabbed L.M.'s left wrist, pulled down his pants, and forced her to stroke his erect penis. Parks moaned as she touched him. When L.M. freed her hand from his grip, Parks left the room.

3

During the period of the molestations, L.M. wrote in her diary that Parks was touching her, that she did not understand why it was happening, and that she hoped it was not happening to her sisters. In December 2009, Tiffany read all ten pages that L.M. had written in her diary. She confronted L.M. about other things she learned from the diary but made no mention of Parks's abuse. L.M. was angry that Tiffany did not say anything about what she had written about Parks and soon discovered that that page had been torn from her diary.

L.M. told her friend Gabby and Gabby's mother that Parks was touching her. In January 2010, L.M. told her friend Maddy and Maddy's mother about the molestations. Maddy's mother contacted the Department of Child Services the next morning.

Shawna Smith of the Department of Child Services contacted Detective Jason Casbon of the Porter Police Department and then went to L.M.'s school to talk with L.M. about the abuse. Smith then contacted Tiffany and L.M.'s father, who picked up L.M. from Tiffany's house that night. The next day, Smith conducted a forensic interview of L.M. at a child advocacy center. Although the interview was recorded on a hard drive, a volunteer at the center failed to notify the prosecutor's office that the interview had occurred so that it could be copied off the hard drive before it was recorded over.

The State charged Parks with Class C felony child molesting. Parks filed a motion to exclude evidence of what was said during L.M.'s interview on grounds that the State failed to preserve the evidence. The trial court granted the motion, prohibiting evidence of what was said during the interview but allowing evidence of the interview to the extent it explained the course of the investigation. *See* Tr. pp. 5-6.

4

At Parks's jury trial, L.M., Smith, Casbon, Gabby, Gabby's mother, Maddy, and Maddy's mother testified for the State. Tiffany testified for the defense. Tiffany acknowledged reading about sexual advances by "Matt" in L.M.'s diary, but when Parks assured Tiffany it was not him, she thought the diary referred to a different Matt. *Id.* at 311-12. During closing arguments, the State noted twice that L.M. was the only witness to the molestations who testified. The jury found Parks guilty as charged, and the trial court sentenced him to four years with all but one year suspended to formal probation. Parks now appeals his conviction.

DISCUSSION AND DECISION

Parks contends that the State committed prosecutorial misconduct amounting to fundamental error by eliciting evidence about L.M.'s interview and by improperly referring to Parks's exercise of his right not to testify during closing arguments. Parks also contends that the evidence is insufficient to sustain his conviction.[2]

I. PROSECUTORIAL MISCONDUCT

Parks first contends that the State committed prosecutorial misconduct.[3] In reviewing a properly preserved claim of prosecutorial misconduct, we determine whether

---

[2] Parks also raises due process claims based on the State's failure to preserve the recording of the interview, *see* Appellant's Br. p. 1 (Statement of the Issues Presented for Review), and an apparent policy of the Porter County prosecutor's office prohibiting plea negotiations after the defense deposes the victim, *see id.* at 7 (Summary of the Argument). However, these claims are waived because he fails to develop any argument regarding them in the Argument section of his brief. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning."); *Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (waiving issue for failure to develop cogent argument), *trans. denied.*

[3] In this portion of his brief, Parks only states the standard of review for fundamental error, with no citation to authority. As his arguments challenge the State's actions at trial, we understand his claims as prosecutorial misconduct.

the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he would not have been otherwise subjected. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). To preserve a prosecutorial misconduct claim, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Id.* Where a prosecutorial misconduct claim has not been properly preserved, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Coleman v. State*, 946 N.E.2d 1160, 1166 (Ind. 2011). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010).

### A. Eliciting Evidence About L.M.'s Interview

Parks argues that the State elicited testimony from "at least four witnesses" about L.M.'s interview in violation of the court's order to exclude such evidence and that the repeated violations by the State "despite repeated objections by defense counsel" amount to fundamental error. Appellant's Br. p. 9. Parks asserts that Smith, the only specific witness he identifies, "spoke akin to an expert about the physical demeanor of [L.M.] during this interview as a means to support [L.M.]'s testimony by intimating that [L.M.] was truthful by her posture and demeanor during this interview." *Id.*

Parks has failed to identify any of the other three witnesses, specify how their testimony violated the court's order, or provide any citation to the record so that we

6

might cobble together his argument. And although he speaks of "repeated objections," he fails to point to any of them. We need not sift through the record to find a basis for a party's argument on appeal. *Johnson v. State*, 675 N.E.2d 678, 681 n.1 (Ind. 1996) (where defendant failed to support assertions with citations to record, "this Court will not search the record to find grounds for reversal"); *see also Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

In any event, Smith testified that she looks at a child's body language when conducting a forensic interview to evaluate how to proceed in the interview and to help her determine the child's credibility. Tr. pp. 273, 292-93. Contrary to Parks's claim here, Smith did not testify about L.M.'s body language during the interview or any of her conclusions regarding L.M.'s credibility.

In his statement of facts relating to the lack of an interview recording and the motion to exclude, Parks, represented on appeal by the same attorney as at trial, notes that Smith testified that L.M. said in the interview that Parks "inappropriately touched her on her vagina and on her breasts." Appellant's Br. p. 6. This testimony, however, occurred outside the presence of the jury, at a time when the trial court was trying to determine whether to allow certain evidence to rehabilitate a witness. *See* Tr. pp. 253, 251. The State's questioning of Smith outside the presence of the jury cannot serve as a basis for misconduct.

As to the supposed other witnesses, our review of the record reveals that no witness testified regarding what specific questions Smith asked nor what specific statements L.M. made during the interview. At most, the State elicited evidence that the interview occurred and basic information about the interview to show the course of the investigation, all of which was permitted by the trial court's ruling on the motion to exclude. There was no error in the State's questioning, much less fundamental error.

### B. Privilege Against Compulsory Self-Incrimination

Parks also argues that the State, during closing arguments, improperly commented on his failure to testify. The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by the jury as an invitation to draw an adverse inference from the defendant's silence. *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001). If in its totality, however, the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal. *Id.*

Parks points to two specific statements. During lead closing argument to the jury, the prosecutor stated, "[L.M.] is the only witness to these events that testified before you." Tr. p. 360. In rebuttal closing argument, the prosecutor stated, "[The molestation] occurs in private leaving [L.M.] being the only witness to come and tell you what happened to her." *Id.* at 380.

Parks did not request an admonishment or a mistrial after either of the statements he now challenges. He therefore operates under the heavy burden of showing fundamental error.

8

Parks cites *Owens v. State*, 937 N.E.2d 880 (Ind. Ct. App. 2010), *trans. denied*, to support his prosecutorial misconduct claim. In that case, the prosecutor said in closing:

> [T]he uncorroborated testimony of a child victim is sufficient to support [a] conviction of child molesting. Ultimately, you can rely solely on [C.R.'s] testimony. And in all honesty, in large part, if not exclusively, that's what you have to rely on. Because the reality is, other than Mr. Owens, she is the only one who knows what happened to her that night. She is the only one who knows what happened to her that night.

*Id.* at 892. This Court noted, "The prosecutor highlighted the fact that C.R.'s testimony was the only evidence before the jury and then explicitly referred to Owens by name and directly compared his knowledge to C.R.'s." *Id.* at 894. The Court determined that the comment was improper but concluded that it did not amount to fundamental error. *Id.*

The facts presented here are distinguishable. Unlike *Owens*, the prosecutor did not explicitly refer to Parks by name or directly compare his knowledge to L.M.'s. Instead, the prosecutor made two isolated comments that L.M. was the only witness to the molestations who testified. *See Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind. 1990) ("Comment on the lack of evidence by the defense concerning otherwise incriminating evidence against him is proper as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify."). Moreover, even if these statements were misconduct, they certainly do not rise to the level of fundamental error. *See Feyka v. State*, 972 N.E.2d 387, 392 (Ind. Ct. App. 2012) (comments that only two people knew what happened and victim testified, that no one else was there to corroborate victim's testimony, and that victim's testimony was uncontested did not amount to fundamental error), *trans. denied*.

## II. SUFFICIENCY OF THE EVIDENCE

Parks next contends that the evidence is insufficient to sustain his conviction. In reviewing a sufficiency of the evidence claim, we do not reweigh the evidence or assess the credibility of the witnesses. *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

To convict Parks of Class C felony child molesting, the State had to prove beyond a reasonable doubt that he, "with a child under fourteen (14) years of age, perform[ed] or submit[ted] to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person." Ind. Code § 35-42-4-3(b).

The evidence most favorable to the verdict shows that Parks repeatedly touched thirteen-year-old L.M. inside her bra and underwear. On one occasion, he spread her legs apart. On a different occasion, he rubbed his bare penis against L.M.'s bottom through her clothes and then went to the bathroom. On yet another occasion, he put his hand down L.M.'s pants and touched her, then grabbed her wrist, pulled down his pants, and forced her to stroke his erect penis. Parks moaned as L.M. was forced to touch him.

Despite this clear evidence, Parks argues that the State failed to prove beyond a reasonable doubt that any of the incidents occurred with the intent to arouse. The intent element of child molesting may be established by circumstantial evidence and may be inferred from the defendant's conduct and the natural and usual sequence to which such

10

conduct usually points. *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. Parks repeatedly touched L.M.'s private areas when the two were alone. He spread her legs apart, rubbed his penis against her and then went to the bathroom, and moaned while he forced her to stroke his erect penis. This is ample evidence to show the intent to arouse. *See Wise v. State*, 763 N.E.2d 472, 475 (Ind. Ct. App. 2002) (evidence sufficient to show intent element where defendant rubbed victim's vagina), *trans. denied*. We conclude that there is more than sufficient evidence to support Parks's conviction.

<u>CONCLUSION</u>

For the reasons stated, we affirm Parks's conviction.

Affirmed.

MAY, J., and CRONE, J., concur.

11